SARAH A. BURNS vs. JAMES R. DOCKRAY & another.

Suffolk.    November 19, 1891. — March 29, 1892.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Fraudulent   Representations — Evidence — Record of Judgment.*

In an action of tort for alleged false and fraudulent representations and conceal-
ment in the sale and conveyance of real estate, the statement absolutely made,
as of a fact, that the title was good, by parties who were in a position to know
the truth or falsity of what they said, coupled with the failure to refer to the
alleged insanity of a person, which, if it existed, would seriously cloud the title,
is a fraudulent representation.

Where A.'s estate had been taken from her by a writ of entry, by reason of the in-
sanity of B. at the time when the deed of the same estate to C., who was A.'s
grantor, was made by B., it was *held*, in an action by A. against C. and another
party for false and fraudulent representations and concealment in the sale and
conveyance of the estate in question, that a request for a ruling based mainly
on the assumption that C. and the other defendant had made representations
that B. was capable of making a deed, was rightly refused, as no such issue was
presented; that A.'s only remedy was not on the covenants in her deed from C.;
that oral testimony of misrepresentations made prior to the delivery of the deed
to A. were admissible on the question of deceit; and that the record of the judg-
ment in the writ of entry brought by the guardian of B. against A. was prop-
erly admitted to show an eviction by a paramount title, and also as *prima facie*
evidence of B.'s insanity at the date of the deed by him to C.

TORT, for false and fraudulent representations and conceal-
ment made by the defendants, whereby the plaintiff was induced
to purchase certain real estate in Boston.

At the trial in the Superior Court, before *Dunbar*, J., the jury
returned a verdict for the plaintiff, and, in answer to a question
submitted by the court, found the defendants liable both for
false representations and for fraudulent concealment; and the
defendants alleged exceptions.

The facts, so far as material, appear in the opinion.

*C. G. Keyes*, for the defendants.

*G. W. Morse & J. C. Lane*, (*J. B. Goodrich & C. R. Darling*
with them,) for the plaintiff.

MORTON, J.    This was an action for fraud in the sale of real
estate to the plaintiff.    The fraud relied on consisted of alleged
misrepresentations and concealments on the part of the defend-
ants as to the title.    The premises were conveyed by one Lang,

on November 13, 1884, to Perrin, one of the defendants, who conveyed them to the plaintiff on March 19, 1885. The defendant Dockray was interested in the sale to the plaintiff, as he had assisted Perrin with funds in the purchase from Lang, and was to have one half of the profits that might be made by a sale of the property. The transaction was conducted on behalf of the plaintiff by her husband, who acted as her agent. The husband testified that the negotiations were between him and the defendants, — principally with Dockray; that Dockray told him of a mortgage on the place, and that Mrs. Lang had a right of dower, and he understood he was to take the property subject to the mortgage and the dower. He also testified that Dockray told him, "There was a good title to the house . . . ; that it was already looked up, and he could vouch it was a good title he could give me . . . ; I would be always safe; he would always look after me, see he gave me a good deed . . . ; told me he would give me a deed that would satisfy me, and I would have no trouble after I got it"; and that Perrin "always said it [the title] was good; always said they would give me a good title." The husband further testified, that he believed Dockray's statement, and took his word for it, and trusted him, though he was a little nervous about it, and employed Henry Naphen, Esq., a lawyer, to look the title up.

It appeared that Lang was adjudged insane on March 30, 1885, and his wife was appointed guardian, and by proceedings subsequently instituted recovered the premises from the plaintiff, on the ground that Lang was insane at the time when he made the deed to Perrin. There was testimony tending to show that Lang was in fact insane at that time, and that then, or soon after, the defendants were informed by Mrs. Lang, and by an attorney whom she sent to them for that purpose, and in other ways, that it was claimed that Lang was insane, and incompetent to make a deed. The defendant said nothing to the plaintiff or her husband as to Lang's insanity, and neither the plaintiff nor her husband knew anything about it until the bringing of the suit by Mrs. Lang as guardian. The plaintiff did not claim that any representations were made to her or her husband as to Lang's sanity by the defendants, or either of them.

It is often difficult to tell whether things that are said at the

time of or preliminary to a sale are to be regarded as seller's talk, of which the buyer must beware at his peril, or as expressions of opinion or judgment on the part of the seller, or as representations of something as true which the seller knows is false, or as representations of something susceptible of knowledge concerning whose truth or falsity the seller is ignorant or mistaken, but which he states as true. It is only where what is said answers to one or both of the last two descriptions that it comes within the category of fraudulent representations. *Pike* v. *Fay*, 101 Mass. 134. *Milliken* v. *Thorndike*, 103 Mass. 382. *Chatham Furnace Co.* v. *Moffatt*, 147 Mass. 403, and cases cited.

In the present case there was the positive statement that the title was good by parties who apparently were in a position to know the truth or falsity of what they said. The statement was not made as a matter of judgment or opinion, and cannot be regarded as seller's talk. The statement was made absolutely as of a fact. Coupled with it was the failure to refer in any way to the alleged insanity of Lang, which, if it existed, seriously clouded the title, making the sale to Perrin voidable at the election of Lang or his guardian. This failure may have been due, as the defendants contended, to the fact that they did not think of it, or that they did not believe him insane, and so attached no importance to the allegation (though neither would have been a valid excuse if the information was material); *Chatham Furnace Co.* v. *Moffatt*, 147 Mass. 403 ; or to the fact that the chance of making a profitable sale led them to keep still about it, in which case their statement that the title was good was clearly fraudulent. *Atwood* v. *Chapman*, 68 Maine, 38.

They were not required to decide whether Lang was actually insane, but to communicate the information which there was evidence they had received. No doubt, even a positive statement that a title is good may involve somewhat matter of opinion ; but it also imports that there are no facts that affect its validity, just as a statement that goods are attached, or one that stock is non-assessable, are representations that facts exist which justify the statements. *Burns* v. *Lane*, 138 Mass. 350. *Windram* v. *French*, 151 Mass. 547. Perhaps there may be cases where a statement, though made positively and distinctly, must be taken as the expression of an opinion ; *Deming* v. *Darling*, 148 Mass.

504; *Eaglesfield* v. *Marquis of Londonderry*, 4 Ch. D. 709; but the statement in this case that the title was good, in view of the circumstances under which it was competent for the jury to find that it was made, cannot be so regarded. In *West London Commercial Bank* v. *Kitson*, 13 Q. B. D. 360, it was held that an acceptance by directors was a representation that the company had power under private acts of Parliament to accept a bill, and was a representation of fact, and not of law. It is not necessary to consider in this case whether an action for a false representation of law will lie. That is still an open question here. *Deming* v. *Darling*, *ubi supra*.

The plaintiff can recover only in case she relied in making the purchase upon the representations of the defendants that the title was good. The husband testified that he believed Dockray's statement, and took his word for it, and trusted him, though he employed Mr. Naphen to look up the title. Mr. Naphen's examination was confined to the records and the deed. He knew nothing, and had no cause to know anything, about Lang's alleged insanity. There was evidence that the defendants heard of it, but they did not tell Mr. Naphen or the plaintiff or her husband of it. They said the title was good. Their statements included the records and the deed, and more. They were also the owners, — at least Perrin was, — and Dockray was interested with him, and they presumably knew all the facts about the title. The plaintiff, therefore, could fairly claim that, though she relied upon Mr. Naphen's examination, she also relied upon the statements made by the defendants. *Safford* v. *Grout*, 120 Mass. 20. *Roberts* v. *French*, 153 Mass. 60. The jury have found in her favor, under instructions which required them to find that, in making the purchase, she relied upon the representations made by the defendants, and there was clearly evidence to justify such finding.

The defendants requested certain instructions, nine in all, part of which were given as requested, and the rest refused. The defendants excepted as to those which were refused, and also to the instructions given that were not requested by them. The last exception has not been argued to us, and must therefore be treated as waived.

The first instruction that was refused, the third in order, was

based mainly on the assumption that the defendants had made positive and direct representations and assertions that Lang was sane, and capable of making a deed. No such issue was presented, and the ruling was, therefore, rightly refused.

The next refused instruction, the fourth, was in substance included in the sixth, which was given as requested by the defendants, and was, to say the least, sufficiently favorable to them in view of the evidence. The sixth request for instruction was: "That if the jury should be satisfied that both the defendants believed, or had reason to believe, or ought to have believed, at the time the deed of Perrin to Burns was made, that Lang was so insane as to be incapable of making a deed at the time he gave the deed to Perrin, and made no representation or statement of such belief or reasons to believe, but concealed the same from Burns, even in bad faith, still that would not be such a fraudulent representation or concealment as to render the defendants jointly or severally liable." The defendants were not harmed, therefore, by the refusal to give the fourth request, even if the propositions which it contained were sound. The fifth, in substance, asked the court to rule that, if the plaintiff's estate had been taken from her by reason of Lang's insanity when the deed to Perrin was made, her only remedy was on the covenants in her deed from Perrin. The ruling thus requested was erroneous, and was rightly refused. The tort was not merged in the contract. Rawle on Covenants, (4th ed.) 568, 569. *Wardell* v. *Fosdick,* 13 Johns. 325. *Gerhard* v. *Bates,* 2 El. & Bl. 476, 491. *Dobell* v. *Stevens,* 3 B. & C. 623. *Pilmore* v. *Hood,* 5 Bing. N. C. 97. The seventh, eighth, and ninth requests were to the point that, upon the whole evidence, a verdict could not be found against either or both of the defendants. They have in effect been already considered, and were rightly refused.

The defendant also objected and excepted to the admission of certain evidence. The first exception was to the admission of oral testimony of false representations made prior to the delivery of the deed to the plaintiff, the defendants claiming that all negotiations were merged in the deed, and that it could not be added to or altered by oral evidence. The court admitted the evidence solely on the question of deceit. The ruling was clearly

right, and the exception is disposed of by what has been said, and the cases cited, as to the fifth of the instructions to the jury requested by the defendant.

The remaining exception was to the admission of the record of the judgment in the writ of entry brought by the guardian of Lang against the plaintiff. This was offered by the plaintiff to show an eviction by a paramount title, and also the insanity of Lang at the date of the deed by him to Perrin. The court ruled that it was *prima facie* evidence of Lang's insanity at that time. It appeared that the issue submitted to the jury was whether Lang was or was not so insane as to be incapable of making a deed at that time, that a verdict was returned for the demandant, and that exceptions were taken and duly allowed and entered in this court, but were waived, and judgment for the demandant for possession was entered by agreement. There was evidence tending to show that both the defendants assisted the plaintiff and her husband in the defence, and were present at the trial; and that Dockray employed an attorney to look after and argue the exceptions, and was informed of and consented to the disposition which was made of the case. Though Dockray was not, like Perrin, liable over on the covenants in the deed to the plaintiff, he assisted in making the sale, and was directly interested in it, and in upholding the deed from Lang to Perrin. He voluntarily took part in the trial and the subsequent proceedings for the purpose of protecting his interest, and also, presumably, of making good his representations; and neither he nor Perrin can now be permitted to say that the record is not evidence against him on the issue on which the trial was had, and which he assisted in defending, and of the plaintiff's eviction. *Chamberlain* v. *Preble*, 11 Allen, 370. *Westfield* v. *Mayo*, 122 Mass. 100, 109. *Robbins* v. *Chicago*, 4 Wall. 657. *Port Jervis* v. *First National Bank*, 96 N. Y. 550.

*Exceptions overruled.*