JOHN MOTHERWAY vs. JOHN WALL.

Suffolk.    December 1, 1896. — May 20, 1897.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Equity — Cancellation of a Deed — Fraud.*

At the hearing on a bill in equity, brought to obtain the cancellation of a deed by which the plaintiff conveyed to the defendant all rights in the property of his deceased wife, there was evidence that the plaintiff's wife had died without issue seised of real estate of the value of $3,100, which, without the written consent of the plaintiff, she had devised to her brothers and a sister; that the defendant, who was the executor of her will, represented to the plaintiff that he had no rights or title to his deceased wife's house, and that nothing had been left to him by her will, and told him that he, the defendant, would do the best he could for him; and that subsequently the defendant procured the plaintiff to execute the deed in question upon the payment to him of the sum of $400. Evidence was also offered and excluded that the defendant, prior to the execution of the deed, said to the sister of the plaintiff that the plaintiff "had been left out, and there was nothing in the will for him, and he can get more with me than he can get in any other way, . . . the will is made and not one dollar to" the plaintiff; that the defendant then offered to let the property to her, telling her that he had the whole charge of it; that he had asked D., one of the devisees in the will, to testify that he had sent the plaintiff to the defendant to arrange for a sale of the property, and that, on receiving D.'s reply that he would not lie for anybody, the defendant said he had no further use for him. *Held,* that the excluded evidence should have been admitted, and that it, in connection with the testimony in the case, would have warranted a finding that the deed was procured by fraud, from which the plaintiff was entitled to relief.

BILL IN EQUITY, filed in the Superior Court on February 27, 1893, to obtain the cancellation of a deed alleged to have been procured by fraud.

The bill alleged that Mary Motherway, the wife of the plaintiff, died on February 16, 1893, without issue, leaving as her next of kin three brothers and a sister; that she was seised of real estate which, with all her other property, by her will, dated December 30, 1892, she bequeathed and devised to her two brothers, Thomas and John Duggan, and to her sister, Kate Cullinan ; that the plaintiff at no time gave his written consent to the will, nor did he know the provisions thereof until after the death of his wife ; that on February 20, 1893, the defendant, who was named by Mary Motherway as the executor of her will, informed the

plaintiff that he was not provided for in his wife's will, and that he had no rights or interest therein; that unless he followed the defendant's instructions he would get nothing, but that he, the defendant, would see that the plaintiff got something out of the estate, and that, if the plaintiff would make a deed of his interest in the estate to the defendant, the latter would pay to him the sum of four hundred dollars; that the plaintiff, being ignorant of his rights, and believing the statements of the defendant, executed to him a warranty deed, for which he received from the plaintiff the sum of four hundred dollars; that such sum was not an adequate consideration for the plaintiff's interest in his wife's estate, as the defendant, who intended to defraud and deceive the plaintiff, well knew; and that the plaintiff was ready to return to the defendant the money received from him.

The prayer of the bill was that the defendant should be enjoined from conveying or encumbering the property conveyed by the plaintiff; that he should be ordered to deliver up and cancel the deed executed by the plaintiff; and that the same should be declared void.

The defendant filed an answer, and also demurred to the bill for want of equity. Issues were framed for the jury, which were tried in the Superior Court before *Sherman*, J., who allowed a bill of exceptions in substance as follows.

The plaintiff is the husband of Mary Motherway, who died testate on February 16, 1894, without issue. By her will she bequeathed and devised all her property, real and personal, to her sister, Kate Cullinan, and to her brothers, Thomas and John Duggan, and appointed the defendant her executor. The plaintiff did not assent in writing to the will, and did not know its provisions when it was made. The personal property of the testatrix was of little or no value, but the value of her real estate was thirty-seven hundred dollars, which was subject to a mortgage of six hundred dollars.

The plaintiff testified that he and his wife had been married about five years, and that they had had no children; that a few days after her death, the defendant came down to the house where she died, and told the plaintiff that he had no title to the house, that he had no business there, and that he ought to go to work; that he would do the best he could for the plaintiff; that

in the afternoon of the same day he took the plaintiff to a lawyer's office in Boston, first going to a bar-room, where they both had three or four drinks; that in the lawyer's office his wife's will was shown to the plaintiff, who, though not able to read well, read a part of it; that nothing was said to him about the will or his rights under it; that the defendant said he would give the plaintiff four hundred dollars, and did give him ten dollars then, and on the following day the plaintiff obtained the balance at a savings bank, after which the defendant told him the best thing he could do was to go home; that he had no business around there as long as he had money enough; that the defendant also said, "Don't say that Wall did this, or Wall said that, but skip out." The plaintiff further testified that he supposed he must have signed the deed, but that he did not remember taking an oath or acknowledging the deed.

On cross-examination, he testified that he could write his name, but could not read; that he supposed he wrote his name to the deed, but only the defendant and a boy were then present, that the defendant offered him four hundred dollars, but he could not tell what it was offered for; that the defendant told him nothing about real estate, nor anything about his rights in it; he told him there was nothing left him by the will; that the lawyer showed him the will and said, "There is nothing left for you there"; and that no one read the will to him, but that he was offered the money, and he signed the deed.

The deed, which was the usual warranty deed, was executed, acknowledged, and recorded on February 20, 1893, and recited that the plaintiff gave, granted, bargained, sold, and conveyed to John Wall, his heirs and assigns, all the right, title, and interest " in and to any and all estate, both real and personal, of which Mary Motherway, my late wife, died seised, and to which she was entitled at the time of her decease."

One Connelly, a sister of the plaintiff, testified to a conversation with the defendant relative to the property, on February 20, 1893, but previous to the signing of the deed. The conversation, which was offered by the plaintiff, and, subject to his exception, excluded, was as follows. Connelly said to the defendant, " I don't want you to cheat John Motherway." The defendant replied that Motherway had been left out, and there

was nothing in the will for him, and that he could get more with him than he could get in any other way. Connelly said, " Mr. Wall, Motherway is to get a lawyer himself so as to get his share of the property," to which the defendant replied, " The will is made, and not one dollar to Motherway." The witness replied, " That is very wrong, as all his labor and earnings were there." The plaintiff then offered to prove by the same witness that, before the deed was signed, the defendant offered to let to her the property at a reduced rate, saying that he had the whole charge of it; and that when the plaintiff came home in the evening after signing the deed he was badly intoxicated.

This evidence was excluded, and the plaintiff excepted.

The same witness further testified that on the day following the signing of the deed she went with the plaintiff to the savings bank, and on leaving it the defendant said to the plaintiff, " John, don't go around and say Mr. Wall said this and Mr. Wall said that, and Mr. Wall done this and Mr. Wall done that. Keep your mind to yourself, and you go into your house, and get the keys of one room, and furnish it with plenty of bedclothes, and stay there until I tell you to leave it", and he added that the best thing Motherway could do for himself was to go home to his father and mother.

Evidence was then offered that the plaintiff was addicted to the excessive use of intoxicating liquors, and that, in consequence of an injury to his head received some time before, he was mentally deficient.

This evidence was excluded, and the plaintiff excepted.

Evidence was then offered to show that, before the trial of this case, the defendant sent for Thomas Duggan, a brother of the plaintiff's wife, and desired him to testify that he had sent the plaintiff to the defendant to arrange for a sale of the property; and that, when Duggan replied that he would not lie for anybody, the defendant said he had no further use for him.

This evidence was excluded, and the plaintiff excepted.

Evidence was then offered to show that the defendant did not receive nor treat the property conveyed as trust property for the heirs, but received it to his own use, and refused to convey it to the heirs, or to recognize their interests in it.

This evidence was excluded, and the plaintiff excepted.

At the close of the plaintiff's case, *Sherman*, J., ruled that there was not sufficient evidence to justify a finding by the jury that the deed from the plaintiff to the defendant was procured by fraud, and on the following issue, " Was the said deed from the plaintiff, John Motherway, to the defendant, John Wall, procured by the fraud and deception of the said defendant, John Wall, practised upon the plaintiff ? " he directed the jury to return an answer in the negative.

The case was then heard upon the bill, answer, and the finding of the jury, as directed; and the judge ordered the bill to be dismissed.  The plaintiff alleged exceptions.

*W. Schofield*, for the plaintiff.

*S. K. Hamilton*, for the defendant.

MORTON, J.  We understand that the plaintiff excepted to the ruling that there was not sufficient evidence to warrant the jury in finding that the deed was procured by fraud.  The principal questions are whether there was evidence, including any which should have been admitted, tending fairly to show that the defendant obtained the deed by fraud, and whether, if there was, the plaintiff is entitled to relief.

We think that there was evidence on which the jury fairly might have found that the deed was procured by fraud.  The plaintiff's wife died seised of the real estate in question, which was less in value than $5,000.  She left no issue, and the plaintiff did not assent in writing to the will.  The real estate therefore descended to him.  Pub. Sts. c. 124, § 1.  Pub. Sts. c. 147, § 6.  St. 1887, c. 290, § 2.  St. 1889, c. 204, § 1.  *Lavery* v. *Egan*, 143 Mass. 389.  *Lincoln* v. *Perry*, 149 Mass. 368.  *Johnson* v. *Williams*, 152 Mass. 414.

The defendant was executor of the will, and may be assumed to have known the actual state of the title.  There was evidence tending to show that he represented to the plaintiff that he had no rights or title in the house, but that he would do the best he could for him, and that the best he (the plaintiff) could do would be to go to work.  There was also evidence tending to show that he told the plaintiff that there was nothing left for him in the will, — meaning that the plaintiff should understand thereby, as the jury might have found, that he had no rights in the property

except such as he derived under the will. This evidence and that of the witnesses Connelly and Duggan, which we think should have been admitted, would have warranted the jury in finding that the deed was obtained by fraud. *Burns* v. *Dockray*, 156 Mass. 135. *Nash* v. *Minnesota Title Ins. & Trust Co.* 159 Mass. 437.

The question remains whether the plaintiff would be entitled to relief. We think that he would be. He must be presumed to have known the law, however ignorant of it he may have been in fact. But his case is not one simply of ignorance or mistake in respect to the law. The defendant's representations, though involving to some extent matters of opinion, were not so expressed, and related to a question of fact, namely, the right or title of the plaintiff. *Nash* v. *Minnesota Title Ins. & Trust Co.*, and *Burns* v. *Dockray*, *ubi supra*. It has been said that "a representation concerning a man's private rights, though it may involve matters of law, is as a whole deemed to be a statement of fact." Pollock, Torts, 242. See also *Alton* v. *First National Bank of Webster*, 157 Mass. 341. Even in the case of a mistake of law, it has been held that "inequitable, unfair, and deceptive conduct which tends to confirm the mistake and conceal the truth" will entitle a party to relief in equity. *Haviland* v. *Willets*, 141 N. Y. 35. We find no error in regard to the exclusion of testimony, except that already referred to.

We assume that the demurrer has been overruled or waived, although upon the papers before us no disposition appears to have been made of it.

On the whole case, we think that, as provided in the exceptions, the finding and decree must be set aside, and the case stand for trial.

*So ordered.*