HERBERT L. RAND et al. *vs.* SAUL MICHAUD.

Aroostook.    Opinion December 11, 1922.

*In an action for deceit, if the language used in the alleged false representation, when*
*understood according to its usual meaning, is such as to influence the other party*
*in inducing him to enter into the contract, such representation being false and*
*known to be false by the maker, and made with an intention that the other*
*party should be influenced by it and rely upon it, who was*
*influenced by it and relied upon it, such a representation is a*
*material one, and a question of law.   Whether such*
*representation is false to the knowledge of the maker,*
*or positively stated by him as a fact, without*
*knowledge of its truth or falsity, which is*
*equally fraudulent if the statement is*
*untrue, are questions of fact for*
*the jury.*

In the instant case although the expressions relied upon do not constitute direct
representations of title to the buildings in the plaintiffs, yet if they were intended
to produce the belief in the defendant that the plaintiffs had such title, they
may be rightfully understood as a representation to that effect.   The court is
of the opinion that the letters of September 13, 22, and 23 are susceptible of
the construction contended for by the defendant, and the question of law must
be answered in the affirmative.

Whether the assertions were actually so understood by defendant, and relied upon
by him, as material influences inducing him to purchase the property, and
whether the plaintiff, H. L. Rand, intended for the defendant to so understand
them, are questions of fact for the jury.

The intention of the seller in making the representations is a material fact, he
either knowing them to be false, or what would be equally fraudulent in law,
knowing that he was affirming as to the existence of a fact, about which he
was in entire ignorance; and he may testify directly on that point.

The plaintiffs cannot escape liability by the use of ambiguous language in their
letters on the ground that they intended no fraudulent misstatement of facts,
if the defendant would reasonably infer the fraudulent meaning from the
language used.

The record thus presents questions of fact for the jury.

On exceptions by defendant.    An action of assumpsit on a promis-
sory note for three thousand dollars given by defendant to plaintiffs.
The defendant under the general issue and a brief statement con-

tended that the consideration for said note consisted of five hundred dollars the balance of the purchase price of sporting camp equipment and accessories, and the remaining twenty-five hundred dollars of the consideration was the purchase price of the camps themselves; that the plaintiffs knowingly had falsely represented to the defendant that they were the owners of the sporting camps, which were erected upon land, title to which was in some third party; that relying upon such false representations he was induced by the plaintiffs to purchase said camps for the sum of twenty-five hundred dollars and to execute and deliver to the plaintiffs the note in question for three thousand dollars, and that such facts afforded a defense pro tanto to the note. At the conclusion of the evidence the presiding Justice directed a verdict for plaintiffs and defendant excepted. Exceptions sustained.

The case is fully stated in the opinion.

*Doherty & Tompkins and Cook, Hutchinson & Pierce,* for plaintiffs.

*A. S. Crawford, Jr.,* for defendant.

Sitting: Cornish, C. J., Spear, Philbrook, Morrill, Wilson, JJ.

Morrill, J. The only question for decision is whether the record presents an issue which should have been submitted to the determination of a jury. We think the question must be answered in the affirmative.

The plaintiffs declare upon a promissory note for $3000; as special matter of defense the defendant says that a part of the consideration for the note, viz.: $500, was in payment of a balance due from the defendant to the plaintiffs for personal property sold by the latter to him; as to the balance of the note he alleges that it "was in payment for certain sporting camps agreed to be sold by the Plaintiffs to the Defendant; that for the purpose of inducing the Defendant to purchase said camps, and to execute and deliver said note to the Plaintiffs, they did knowingly and falsely represent to the defendant that they were the owners of and had title to said camps, and had good right to sell and convey the same to him; that relying upon the truth of said representations, and in ignorance of the fact that they were untrue, the Defendant was induced to purchase said camps from the Plaintiffs and to execute and deliver to them the aforesaid note; that, in truth and in fact the said camps were not the property of the Plaintiffs, nor did they have good right to sell and convey the same to the Defendant."

It is conceded that false representations of title to land may be actionable and may be the foundation of an action for deceit. *Burns* v. *Dockray*, 156 Mass., 135. *Atwood* v. *Chapman*, 68 Maine, 38; even though the conveyance which the complaining party to the transaction has been induced to accept contains no warranty respecting the matter to which the false representation relates. *Brown* v. *Blunt*, 72 Maine, 415, 418.

The defendant under the pleadings occupies the position of a plaintiff in an action for deceit.

The record discloses that in August 1920, the plaintiffs were in occupation of, and managing certain camps, resorted to by sportsmen, known as the "Titus Camps," located on the east side of Eagle Lake in Aroostook County; the personal property they held under a bill of sale with full covenants of title, dated December 3, 1919, from one George W. Cooper, which contained the following clause, "Also, all my interest in and to the Titus Camps." They occupied the real estate as assignees of a lease dated March 1, 1917, for a period of four years, given by David Pingree and others to Leonard A. Pierce and others, which on December 19, 1919 had been duly assigned by the lessees with the written consent of the lessors, to the plaintiffs who assumed all the covenants and stipulations of the original lessees. This lease demised the land, and buildings and improvements thereon at the date of the lease, and contained a provision prohibiting the assignment of the lease, or the surrender of the premises to other parties without the written consent of the lessors, or the use of the premises for any other purposes than as "sportsmen's lodges."

The lease also provided that the lessees would "at the termination of this lease peaceably deliver up to the said lessors, their heirs and assigns, the said premises and the buildings and improvements thereon; and, in consideration of this lease, will leave on the said premises as the property of said lessors, and their heirs and assigns, without any cost or liability on the part of said lessors for betterments or improvements of any kind, any *further* buildings, erections, additions or improvements that may be placed upon the said premises by said lessee during the term of this lease; and it is hereby agreed that all said *further* buildings, erections, additions and improvements, without the necessity of any further act by either of the said parties hereto, *become the property of the said lessors and their heirs and assigns.*"

There is no evidence that any "further buildings, erections, additions or improvements" were placed upon the leased premises after the date of the lease. It is therefore clear that the only title to the real estate which the plaintiffs had at the time of the transactions in question, was as assignees of the unexpired term of the lease.

Late in August 1920, one of the plaintiffs, Mr. H. L. Rand, began negotiations with the defendant, at first to put the property in the latter's hands for sale on a commission basis, finally resulting in a sale by plaintiffs to defendant and the delivery of a bill of sale, with full covenants of title, dated October 2, 1920, describing the property sold as follows:

"The following goods and chattels, to wit:

"All the personal property in and about and connected with the Titus Camps, so called, situated on the shore of Eagle Lake, Aroostook County, Maine; also all our interest in and to the Titus Camps; also one large motor boat on the lake as used by us and one canoe.

"Being the same camps sold to us by George W. Cooper by Bill of Sale dated December 3, 1919.

"Said Titus Camps are situated in Section twenty-three of Township sixteen, Range six, W. E. L. S., Aroostook County, Maine, on land owned by David Pingree and others."

No assignment of the lease was given, but by arrangement with the lessors, Michaud was permitted to take possession of the camps with the understanding, conditionally, that at the expiration of the lease March 1, 1921, he should have a renewal for another term of four years, at the same rental; this arrangement was subsequently carried into effect.

The alleged misrepresentations are contained in letters from H. L. Rand to the defendant. The negotiations began with a letter dated August 27, 1920, in which Mr. Rand said: "Before I left Eagle Lake I intended to have a talk with you regarding my property there. I have come to the conclusion, after a careful study of the situation, that I cannot continue to run that place, and that it is best for me to sell my interest in it for the best price I can get. . . . . As far as I am concerned I should like to leave this place in your hands to sell on a commission basis."

To this letter defendant replied under date of August 31, 1920: "Your letter of 27th received contents noted but not fully understood, what do you want for the place your interest and others if their are

any, as I understand you are with your brother. I probably would be interested myself if I could buy them cheap enough. . . . . What do you pay for the lease and who to?"

Under date of September 13 Mr. Rand wrote: "You may have the camps at the close of the season for $2500 *which does not include furnishings.* We will sell you the furnishings at a very fair price. I am sure there would be no disagreement between us on that phase of the trade. . . . I am sure you can make of those camps the best in the State of Maine. If I could go there and run them myself, I would not sell the outfit for less than $10,000; but since I cannot afford to leave my school, and boys' camps, you are to greatly benefit yourself *by buying the buildings for half the cost of erecting the central lodge or club camp* today. A stone mason told me last summer that the fireplace in that central building could not be built for $1000. *The camp, known as the governor could not be replaced* for $1500. *So you see when you get the buildings* for $2500 all but one building and the fireplace are being presented to you."

On September 22, the wife of H. L. Rand met the defendant on the premises and a price was agreed upon, $2500 for the camps and $1500 for the furnishings as the defendant testifies, $4000 for the entire property as Mrs. Rand testifies; and a telegram, having reference to sending the papers, was sent to Mr. Rand. Acknowledging receipt of the telegram, on the same day Mr. Rand wrote: "I will send papers as soon as I can have them made out. I cannot give you a warranty deed because the camps are built on leased land, but *there is no doubt about your title to the property.*" On the following day, September 23, Mr. Rand wrote, after referring to a call upon his attorney, "Regarding a warranty deed he told me just the same as Mr. Doherty of Houlton did, that is, that the paper which you will receive is really *a warranty deed but is written in a different form because the buildings are on leased land.*" The remainder of the correspondence relates to negotiations with the lessors to permit the lease to remain in the name of the Rands until expiration March 1, 1921, while the defendant was in possession, and then to renew the lease in the name of defendant.

The defendant contends that these letters conveyed to him the affirmation that the plaintiffs had the title to the buildings which constituted the "camps," and that their title to the buildings was perfect; he contends that such representations related to a material

fact, directly affecting the value of the property, were false and known to the plaintiff, H. L. Rand, to be false; that they were made with the intention that the defendant should rely on them; and that he did rely on them as material influences inducing him to purchase the property, and suffered damage thereby.

If the language used, when understood according to its usual meaning, is susceptible of the construction contended, the representation was material, which is a question of law; *Caswell* v. *Hunton,* 87 Maine, 277; *Greenleaf* v. *Gerald,* 94 Maine, 91; whether it was false to the knowledge of the maker, or positively stated by him as a fact without knowledge of its truth or falsity, which is equally fraudulent if the statement is untrue, are questions of fact for the determination of the jury.

Although the expressions relied upon do not constitute direct representations of title to the buildings in the plaintiffs, yet if they were intended to produce the belief in the defendant that the plaintiffs had such title, they may be rightfully understood as a representation to that effect. *Nash* v. *Minn. Title Ins. & Trust Co.,* 159 Mass., 437, 440. It is enough to furnish the foundation of liability if language was used in regard to the title which the user intended should be understood as a representation that their title to the buildings was perfect, when the plaintiffs knew that under the lease they had no title thereto. id. 163 Mass., 574, 580.

Whether the expressions relied upon were susceptible of the construction contended for by the defendant, viz.: that the title to the buildings was in the sellers and that they were to be included in the sale, is a question of law.

The letter of September 13 is certainly susceptible of being construed as a direct, unconditional offer to sell for $2500 the camps, not including the furnishings, and as an affirmative representation that the "camps" included the buildings; the assertion in the letter of September 22,—"there is no doubt about your title to the property"—although it may be said to involve a matter of opinion (*Atwood* v. *Chapman,* 68 Maine, 40) was positively made by a person who was in a position to know the truth or falsity of the statement. It was made absolutely as a fact, (*Burns* v. *Dockray,* 156 Mass., 135, 137) and in connection with the preceding letter was susceptible of construction as representation that the seller's title to the buildings included in the "camps" was valid; the letter of

September 23 is likewise susceptible of construction as an assertion that the buildings were included in the sale, otherwise what need of reference to the buildings. The question of law must be answered in the affirmative.

Whether these assertions were actually so understood by defendant, and relied upon by him, as material influences inducing him to purchase the property, and whether the plaintiff, Herbert L. Rand, intended for the defendant to so understand them, are questions of fact for the jury. *Sherwood* v. *Marwick*, 5 Maine, 295, 300. *Page* v. *Bent*, 2 Met., 371.

The intention of the seller in making the representations is a material fact, he either knowing them to be false, or what would be equally fraudulent in law, knowing that he was affirming as to the existence of a fact, about which he was in entire ignorance. *Stone* v. *Denney*, 4 Met., 151. Whenever one's actual feelings or intentions are in issue, as distinguished from his manifestations of them, he may testify directly on that point. *Edwards* v. *Currier*, 43 Maine, 474. *Faxon* v. *Jones*, 176 Mass., 206, 209.

The plaintiff, Herbert L. Rand, testifies that the word "camps" meant to him a business, and that when he made the proposition that he would sell the "camps" or his interest in them for $2500, "that included the advertising and the good will and the catalogues and everything that I had about that camp—the business of the camps." We do not find that he makes any explanation of the other expressions in the letter of September 13 as to the advantage and benefit Michaud would obtain in buying the buildings; he denied however that, when he wrote this letter of the 13th, and the following one of the 22d, he knew that he had no title to the camps. He also makes explanation of other language used in his letters.

Mr. Justice Knowlton in *Nash* v. *Minn. Title Ins. & Trust Co.*, 163 Mass., 579-80, aptly states the law as to the admissibility and weight of such testimony:

"Of course one will be presumed to have intended his language to be understood according to its usual meaning, and in ordinary cases, in the absence of a reasonable explanation of his mistake, his testimony that he meant something different from what he said will have but little, if any, weight. But inasmuch as the question involved is what was his state of mind, and his actual intent as distinguished from his apparent intent, he is entitled to explain his language as

best he can, if it is susceptible of explanation, and to testify what was in his mind in reference to the subject to which the alleged fraud relates."

If, however, the chance of making a profitable sale led the plaintiff, H. L. Rand, to affirm absolutely as a matter of fact that the title was good, and that he was selling the buildings, and the purchaser relied upon such statements and was misled thereby, such statements are fraudulent. *Burns* v. *Dockray,* 156 Mass., 135, 137. The plaintiffs cannot escape liability by the use of ambiguous language in their letters, on the ground that they intended no fraudulent misstatement of facts, if the defendant would reasonably infer the fraudulent meaning from the language used. *Downey* v. *Finucane,* 205 N. Y., 251; 98 N. E., 391; 40 L. R. A. N. S., 307.

The record thus presents questions of fact for the jury, who saw the witnesses and could judge of the weight to be given to the testimony.

The plaintiffs further contend that the ruling should be sustained because the defendant, if his other contentions are sustained, has failed to show that he suffered damage. *Brown* v. *Blunt,* 72 Maine, 415. But the issue whether upon this record the buildings were of any value in excess of their value under the lease, and the determination of such value, is peculiarly the province of the jury.

*Exceptions sustained.*