AZAD MARANGIAN *vs.* ALBERT S. APELIAN.

HAGOP MARANGIAN *vs.* SAME.

Suffolk. April 6, 1934. — May 25, 1934.

Present: RUGG, C.J., PIERCE, FIELD, DONAHUE, & LUMMUS, JJ.

*Physician and Surgeon. Negligence,* Of physician, Proximate cause. *Proximate Cause. Evidence,* Presumptions and burden of proof.

Where, at the trial of an action of tort against a physician and surgeon, the testimony taken as a whole establishes facts upon which the jury would be warranted in finding that the defendant knowingly was guilty of omissions in the care of the plaintiff which would bring unnecessary suffering to him and would contribute to, if they were not solely responsible for, a present, permanently crippled physical condition, a refusal to direct a verdict for the defendant is required: it is not essential to the defendant's liability that he should have been able to foresee the precise manner in which the injury happened, but it is sufficient that injury was reasonably to be apprehended as the result of the negligent conduct.

Where, at the trial of an action of the character above described, the defendant testified that, if he had been guilty of certain acts they would have been bad medical practice, and where there was evidence that he had been so guilty and there was expert testimony to the effect that a number of such acts in combination were sufficient to cause the damage admittedly sustained by the plaintiff, the question of liability properly was submitted to the jury.

At such a trial it was not error to refuse sundry requests by the defendant for rulings, each to the effect that there was no evidence that a specified act of the defendant was a proximate cause of injury to the plaintiff.

Two ACTIONS OF TORT against a physician, the first to recover for personal injuries sustained by reason of alleged malpractice by the defendant, and the second, by the father of the plaintiff in the first action, for consequential damages. Writs dated May 4, 1929.

In the Superior Court, the actions were tried before *Keating*, J. Material evidence is stated in the opinion. There were verdicts for the plaintiffs respectively in the sums of $5,918 and $1,737, and the judge reported the actions for determination by this court.

*J. N. Clark*, for the defendant.

*A. V. A. Thomason*, (*C. S. Hartwell* with him,) for the plaintiffs.

PIERCE, J. These are two actions of tort against the same defendant, a physician, to recover direct and consequential damages for the same alleged malpractice.

The declaration in the case of the infant plaintiff, Azad, alleged, in substance, that for the period of about eight weeks beginning on or about January 15, 1928, the defendant, a physician hired and employed to treat the plaintiff, carelessly, negligently and unskilfully treated, handled and attended the plaintiff whereby the plaintiff was injured. The answer was a general denial. On motion of the defendant that the plaintiff be required to specify wherein the defendant carelessly, negligently and unskilfully treated, handled and attended him, the plaintiff filed the following specifications: "The defendant carelessly, negligently and unskilfully treated, handled and attended the plaintiff in the following particulars, to wit, that the defendant failed to exercise the usual and ordinary care and skill in diagnosing the plaintiff's ailment, and failed to exercise the usual and ordinary care and skill in performing a surgical operation upon the plaintiff, and failed to exercise the usual and ordinary skill in prescribing for and treating and handling the plaintiff." It is agreed by the parties that the disposition of the Hagop action shall be governed by the disposition of the Azad case, so that only questions of law presented by the Azad case are to be considered. At the close of the testimony the defendant

duly presented a written motion that the judge direct the jury to return a verdict for the defendant. The motion was denied and the defendant duly excepted. The defendant, after denial of his motion, filed twenty-nine requests for rulings and instructions. The judge gave requests numbered 15 and 16 and refused to give each of the remaining requests. To this refusal the defendant duly excepted. No exceptions were taken to the charge by the plaintiffs or by the defendant, save such exceptions as were taken by the defendant to the refusal to give requests numbered 1–14, both inclusive, and requests numbered 17–29, both inclusive. In each action the jury returned a verdict for the plaintiff.

The cases are before this court by the report of the trial judge, at the request of the parties, on the following stipulations: "If the Supreme Judicial Court shall decide that the motion for a directed verdict in the case of Azad Marangian should have been allowed, verdicts are to be entered for the defendant in both cases. If the Supreme Judicial Court shall decide that there was an error prejudicially affecting the rights of the defendant in my refusal to grant any of the requests of the defendant for rulings and instructions in the case of Azad Marangian, new trials shall be granted in both cases. If the Supreme Judicial Court shall decide in the case of Azad Marangian that the denial of the defendant's motion for a directed verdict was correct and that there was no prejudicial error in the refusal to grant any of the defendant's requests for rulings and instructions, the verdicts returned by the jury for each plaintiff are to stand, subject to final action by the trial judge on the defendant's motion for new trial on the ground of excessive damages, now pending in each case."

The testimony in its aspect most favorable to the plaintiff's case warranted the jury in finding the following facts: The defendant resided in Belmont with offices in Boston, and as a general practitioner was engaged in both places in the practice of medicine and surgery. In response to a call on January 16, 1928, at about noon, he went to the home of the plaintiff, Azad Marangian, on Sharon Street, Boston.

He found Azad, then slightly under five years of age, in a bed or in a crib with a side that dropped down. He learned from the plaintiff's mother that Azad had not felt well on the previous Saturday night and was feverish on Sunday. He went to Azad and said, "Open your mouth"; he looked at Azad's tongue, took his pulse and said, "It is scarlet fever." He did not look in the boy's nose or in his throat or into the back of his mouth. He said, "This is [needs] serum. I am going to the health department and bring it, I will be back at night." He went away and came back at night with the serum. He had a bag or case and took from it a hypodermic syringe or needle. He then broke open a bottle of the serum and drew the contents into his syringe. The father then took off Azad's clothes and made him lie on his face. Then the defendant said he needed something at the drug store, gave the father a prescription and said, "Go to the drug store and get it, it is necessary for me to rub it on the patient after injection." On the father's return from the drug store, the defendant was reading a blue paper, and he said to Marangian: "I am glad I have time to read this paper, it is a direction given me by the board of health, it says 'that a subject who has had an injection of antitoxin before this be careful and make a test before giving it.'" Marangian had previously told the defendant that the boy had antitoxin for diphtheria. The defendant said, "Too bad, this bottle is useless now . . . we will break the other bottle of serum." The defendant took another hypodermic needle and drained the contents into the needle. He put the needle in the boy six or seven times within about ten or fifteen minutes. He put the needle in the hips and twice in the arm. The father held the boy while the defendant gave the injections. The defendant did not use iodine before he put the needle in the boy. The defendant did not wash the needle between the injections. He put a little cotton on the open bottle of serum to keep to use again the next day, and in fact used it on the following morning. The defendant, when called by the plaintiff, testified that a failure in the circumstances to examine the child's nose, throat, tongue

and ears, and to take his temperature, would have been bad practice; that it would have been bad practice to have failed to boil or otherwise sterilize the needles before using them; and that such failure would probably be followed by the development of an infection of the patient.

The requests for instructions numbered 2 and 3 for the purpose of the requests concede, as we understand them, that the testimony warranted the jury in finding negligent administration of the antitoxin, but contend that there was no causal relation proved between the admitted bad practice, if found by the jury, and the septic arthritis from which the plaintiff admittedly later suffered. The defendant testified that a failure to instruct the mother, or other attendant of the child, to keep him on a milk diet and to give him plenty of water would be bad practice and would probably be "followed by grave consequences to the patient." The jury would have been warranted in finding, on the testimony of the mother, that at no time while the boy was ill did the defendant tell her what to give him to eat or to drink. The requests for instructions numbered 4 and 5 necessarily admit there was testimony to warrant the jury in finding that there was a failure by the defendant to give instructions in regard to diet, but contend, if they should so find, that there was no causal connection proved between such bad practice and the septic arthritis from which the plaintiff later suffered.

The testimony warranted the jury in finding that the defendant took the temperature of the child only on two or three occasions toward the last of Azad's illness. If the jury should so find, the defendant contends under request numbered 6 that there is no evidence that the failure to take his temperature oftener caused proximately any damage to the plaintiff.

There was testimony to warrant the jury in finding that the defendant discouraged the removal of the child to the City Hospital, and that good practice would have directed that the boy be sent to a hospital as a place more likely to protect and safeguard him than facilities available and the care possible by an inexperienced mother in a three-room

tenement.  The requests for rulings 7, 12 and 13 are based on the contention that the proof does not show that the failure of the defendant to recommend the hospitalization of the plaintiff resulted proximately in damage to him or that the eventual results respecting the plaintiff's physical condition would have been different had he been removed to a hospital;  or, more particularly, that the failure to remove him to a hospital from February 18, 1928, to February 24, 1928, did not cause proximately any damage to the plaintiff.

The testimony warranted the jury in finding that good practice required that the defendant should have made calls on the plaintiff between January 20 and January 26, 1928, to observe the reactions which followed the injections and thereby guard against possible complications; and that the defendant failed to follow such practice; that the defendant had neglected to make the examination which good practice required should be made of the nose, throat and kidneys;  and that the defendant opened without proper aseptic precautions certain abscesses which appeared on the plaintiff.  These instances of alleged malpractice are covered by the defendant's requests for rulings numbered 8, 9 and 10 to the effect that no harm from such failure resulted proximately in any damage to the plaintiff.  There was ample testimony to support a jury finding that the aseptic measure was not made use of by the defendant and for a finding that failure to use aseptic precautions increases the probability of infection.

It is the plaintiff's contention and is supported by testimony, that the defendant should not have opened the abscess in the region of the hip, in the surroundings at the time he did, without the assistance of another doctor or a nurse, or without administering an anaesthetic, or without adequate facilities, or an X-ray, and that the defendant should not have undertaken to open the abscess in the region of the hip before making some examination to determine whether the hip joint was involved in the general infection.  In view of these contentions the defendant presented for instruction requests numbered 11, 14, 18, 19,

26, 28 and 29, each of which in substance is to the effect that none of the acts done and none of the alleged failures to act caused proximately any damage to the plaintiff.

The defendant assumed that the plaintiff contended that the testimony warranted a finding that some act or failure to act on the part of the defendant was responsible for the septic arthritis from which the plaintiff suffered, and requested an instruction, numbered 17, in substance, that the defendant was in no way responsible for any sufferings, injury or damage which the plaintiff may have suffered as the result of septic arthritis. The plaintiff does not agree that the words "septic arthritis" correctly diagnose the plaintiff's condition, and contends that the request would have compelled the judge to assume for the purpose of the instruction that the plaintiff had septic arthritis and thus lead the jury into believing that if the plaintiff had septic arthritis the plaintiff could not recover for other acts and defaults causing suffering and harm to him. The testimony supports the plaintiff's contention that the defendant was negligent in failing to call a specialist or consultant, and that his failure to apply extension and immobilization to the plaintiff's hip joint was bad practice and would increase the destruction of the bone.

The defendant also presented requests numbered 22, 23, 24, 25 and 27, which were intended to cover the alleged improper use of vaccine, and every other act of the defendant, either of commission or of omission, and sought a ruling that the acts or omissions of the defendant were not negligent acts or omissions which proximately caused damage to the plaintiff. All these requests rest upon two postulates — one contained in request numbered 20, that "There is no medical evidence from which a jury may find that any negligent act on the part of the defendant caused proximately any damage to the plaintiff"; the other contained in request numbered 21, that "Without medical opinion and evidence that a negligent act on the part of the defendant caused proximately damage to the plaintiff, the jury may not draw a conclusion that damage resulted from the alleged negligent act or acts."

It is plain the testimony taken as a whole establishes facts upon which the jury would be warranted in finding that the defendant knowingly was guilty of omissions in the care of the plaintiff which would bring unnecessary suffering to him and would contribute to, if they were not responsible for, his present, permanently crippled physical condition. The refusal to direct a verdict was required and it would have been error to grant the defendant's motion. It is not essential to the defendant's liability for injury that the defendant should be able to foresee the precise manner in which the injury happened; it is sufficient that injury to another was reasonably to be apprehended as the result of the negligent conduct. *Hollidge* v. *Duncan*, 199 Mass. 121.

The causal connection between the defendant's negligent acts and the plaintiff's injuries should be shown by proof and not rest upon conjectural or speculative inferences. It is the contention of the defendant that the doctrine of *res ipsa loquitur* is not applicable to establish causal connection between the alleged negligence and the alleged injury. *Semerjian* v. *Stetson*, 284 Mass. 510, 514–515. He further contends that it is only in exceptional instances, this case not being one of them, where a jury, instructed by common knowledge and experience, may without aid of expert medical opinion determine whether the conduct of a physician toward a patient is violative of that special duty which the law imposes as a consequence of the particular relationship. The contention is warranted by the decision in *Toy* v. *Mackintosh*, 222 Mass. 430, 432, and in *Chesley* v. *Durant*, 243 Mass. 180, 182. Compare *Traverse* v. *Wing*, 256 Mass. 320, 322, 323.

The plaintiff does not deny that this principle is applicable, but contends that actual facts of physical conduct, testified to by the defendant himself, amply warranted the submission of the case to the jury, and warranted the finding that various acts of negligence were bad medical practice, and that acts of the defendant, shown by the testimony, if believed, would probably cause the infection, increase the severity of the infection, reduce the plaintiff's chances of

recovery, cause the destruction of the bone, which was destroyed, and cause the illness of the plaintiff to be prolonged, suffering to the infant plaintiff and increased expense to the infant plaintiff's father.

Although the jury might have found that no single act of the defendant, set out in his requests for rulings, was negligence which proximately caused damage to the plaintiff, they well could have found on the expert evidence that a number of the said alleged negligent acts, if proved, in combination were sufficient to cause the damage admittedly sustained by the plaintiff. A request to charge which selects certain circumstances that in themselves are not decisive of the case but may be considered in connection with the other facts in evidence may be denied properly. *Green* v. *Boston & Lowell Railroad,* 128 Mass. 221. *Boston* v. *Fountain,* 267 Mass. 196. The testimony introduced by the plaintiff under the specifications, if believed, warranted the finding that omissions of the defendant were improper practice from a medical standpoint and that they, in combination, caused to some degree damage to the plaintiff that was not the natural result of his illness.

The denial of the defendant's motion for a directed verdict was correct. There was no prejudicial error in the refusal to grant any of the defendant's requests for rulings and instructions. It follows, in accordance with the stipulation of the parties, that the verdict for each plaintiff is to stand subject to final action by the trial judge on the defendant's motion for a new trial on the ground of excessive damages now pending in each case.

*So ordered.*