DAMASE BOUFFARD *vs.* J. EDWARD CANBY.

Berkshire.    September 17, October 7, 1935. — October 31, 1935.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Negligence*, Of physician. *Practice, Civil*, Exceptions: whether error harmful.

In an action for malpractice against a physician, evidence that the defendant treated, in accordance with accepted practice in the vicinity, a wound resulting from glass entering the plaintiff's hand; that during the period of such treatment, about a week, infection set in and grew constantly worse; and that thereafter another physician eliminated the infection by different treatment, discovered with x-ray a small piece of glass remaining in the hand and advised treatment by a specialist, who removed the glass and discovered and repaired a severed tendon and nerve in the hand, did not warrant a finding that the defendant was negligent.

An exception to the exclusion of evidence not followed by an offer of proof disclosed no prejudicial error.

TORT. Writ dated December 16, 1931.

The action was tried in the Superior Court before *Morton*, J.

*W. A. Heaphy*, for the plaintiff.

*W. J. Donovan*, (*F. DeL. Cunningham* with him,) for the defendant.

PIERCE, J. This is an action of tort or contract for the same cause of action. The declaration, consisting

of a count in each division, alleges in substance certain
conduct of the defendant, a practising physician, in the
care and treatment of a wound accidentally sustained by
the plaintiff while capping a bottle, which conduct, as to
omission or commission, the plaintiff contends was negli-
gence on the part of the defendant. The declaration alleges
specifically that the defendant failed to locate a piece of
glass left in the wound at the time of the accident and failed
to discover that a tendon and nerve had been severed. It
alleges other unskilful and negligent treatment of said
wound causing infection which resulted in a permanent
injury to the plaintiff's hand. The defendant's answer in
substance is a general denial and plea of contributory negli-
gence. At the close of the evidence the defendant moved
that upon all the evidence in the case the judge direct a
verdict for the defendant. This motion was allowed and
the plaintiff duly excepted. During the presentation of
evidence the plaintiff saved exceptions to the order of the
judge excluding certain questions, all of which are con-
tained in the bill of exceptions. These exceptions are
waived except as they are specifically argued.

The facts most favorable to the plaintiff's contentions
which warrantably the jury could have found are, in sub-
stance, as follows: On Thursday, June 4, 1931, the plain-
tiff lived in Great Barrington and by occupation was a
janitor. On that day, while capping a bottle, it broke and
a piece of glass irregular in shape and about three inches in
length entered his right hand in a slanting direction at or
near the base of the thumb. A piece of glass was pulled
out of the plaintiff's thumb soon after the injury and
thrown away. Later a surgical operation was had and a
small piece of glass was found in the original wound. This
piece was exhibited to the jury. The defendant was called
in as an attending physician on the day of the accident and
treated the plaintiff until June 10, 1931, when one Dr.
Beebe was called as attending physician. Prior to the ar-
rival of the defendant the plaintiff held his hand in water
containing sylpho napthol. The defendant probed the
wound twice for foreign substances, and stated to the plain-

tiff in the presence of his wife that he was sure there was nothing left in the wound. The wife of the plaintiff asked the defendant "if it was a serious thing" and the defendant replied, "well, it's a very deep wound. It is an inch and a half, possibly two inches deep, but it's entirely a flesh wound." The defendant also advised the plaintiff that it was not necessary to go to a hospital, that he would have him back at work on the following Monday. On the first examination the defendant made he examined the thumb and index finger to ascertain whether "tendons or anything" had been cut. He put his hand on the plaintiff's thumb to move it while the plaintiff moved his index finger, and he said to the plaintiff: "just as long as you move your index finger, there is nothing in the hand, everything is all right." The plaintiff was not able to move the thumb himself but was able to move the index finger. The defendant put a bandage on the wound and that night, Thursday, the plaintiff went to the office of the defendant who put three metal clips and a little salve on the wound. The plaintiff visited the defendant at his office on Friday and Saturday, June 5 and 6. On Friday morning, the defendant saw the plaintiff, looked at the wound and said, "that is coming fine, Billie." The hand at that time was sore and swollen and the plaintiff could not move it. There was pain in the wound and in the wrist. He told the defendant the hand was sore, and was advised to soak the finger in hot water to relieve the pain. On Saturday morning he informed the defendant that he had not slept well. There was swelling in the thumb, index and second fingers and wrist. The defendant told the plaintiff "it was coming fine," gave him a prescription of epsom salts to be used in hot water in soaking the hand, and a bottle of liquid for sleeping purposes and told him it was not necessary to see him on Sunday. On Sunday all the fingers and the hand were swollen and sore and the swelling was up in the elbow. On Monday, June 8, the defendant was called; the pain was "terrible" and had gone as far as the shoulder. On Tuesday and Wednesday the plaintiff was confined to his bed most of the time. During this time there was no change in the

treatment of the wound and the hand grew increasingly painful, swelled to about one half again its normal size, the swelling continuing up the arm to the cords in the neck; and the hand became partially discolored and partially numb and stiff. On June 10 the defendant told the plaintiff not to worry, that the hand was coming fine, and told the wife of the plaintiff "It is not infectious at all, absolutely good." The plaintiff was feeling much worse on June 10 than on any previous day and after the defendant's visit, he called Dr. Beebe, a practising physician in Great Barrington. Dr. Beebe found the plaintiff in great pain and that a septic condition existed. He inoculated him, took his temperature, ordered him to bed and ordered applications of steam towels and an electric pad on the hand for forty-eight hours. The plaintiff remained in bed six days. After June 10 discoloration disappeared, swelling went down, pain decreased and nausea left the plaintiff. Prior to June 22 the swelling went down a great deal and on that day Dr. Beebe ordered an x-ray taken at the hospital. The x-ray disclosed a foreign substance which on operation proved to be a small piece of glass. After the x-ray was taken Dr. Beebe advised the plaintiff to see a specialist. The plaintiff accordingly consulted a specialist of Hartford, Connecticut, and was informed that the tendon was cut and the nerve was badly severed and that he needed an operation. An operation was performed by the specialist on September 4, 1931, and a piece of glass removed from the thumb. A second operation was performed by the same specialist on January 12, 1932. This operation was necessary by reason of the shortening of the tendon which had previously been repaired on the first operation.

It is stated in the plaintiff's brief that "While the plaintiff contends that certain omissions of the defendant were *per se*, some evidence of negligence to be weighed by a jury, nevertheless, the plaintiff does not necessarily stand on any particular omission. It is the plaintiff's contention that the testimony taken as a whole, establishes facts upon which the jury would be warranted in finding that the defendant knowingly was guilty of omissions in the care of

the plaintiff, which would and did bring unnecessary suffering to him and would and did contribute, if they were not wholly responsible for, the present permanently crippled physical condition of the plaintiff's hand"; that the "testimony, if believed, would warrant the jury in finding that omissions of the defendant were improper and bad practice from a medical standpoint in Great Barrington and that these omissions in part caused or contributed in some degree to the present condition of the plaintiff's hand"; and also that "There was evidence to be weighed by a jury, under the proper instructions, tending to show that the defendant was guilty of certain omissions well within the field of common knowledge possessed by a jury," citing *Marangian* v. *Apelian*, 286 Mass. 429, and *Gabrunas* v. *Miniter*, 289 Mass. 20.

The defendant's duty to the plaintiff was to use the care and skill of the ordinary practitioner in the community where he practised his profession. *Carey* v. *Mercer*, 239 Mass. 599, 601. *Semerjian* v. *Stetson*, 284 Mass. 510, 512, 513. It is only in exceptional cases that a jury instructed by common knowledge and experience may without the aid of expert medical opinion determine whether the conduct of a physician toward a patient is violative of the special duty which the law imposes as a consequence of this particular relationship. *Marangian* v. *Apelian*, 286 Mass. 429, 436. *Toy* v. *Mackintosh*, 222 Mass. 430, 432. *Ewing* v. *Goode*, 78 Fed. Rep. 442, 444.

At the trial in the present action four medical experts testified and all agreed that the injury of the type described by the witnesses would make it highly probable that the original puncture of glass would cause infection. There was no evidence that the probe used by the defendant was unsterile or, if so, that it caused or contributed to the infection. *King* v. *Belmore*, 248 Mass. 108. There being no medical evidence other than that the infection followed and developed from the wound, the jury could not have inferred that the infection resulted from the use of unsterile appliances. It is the contention of the plaintiff, as we understand it, that the jury could have found that the defendant

knew or should have known of the probability of infection or blood poisoning resulting from the wound and could rightly infer that he did not give the plaintiff proper treatment and attention at a time when, from a layman's point of view, the plaintiff was growing worse. The answer to this position is that the uncontradicted medical testimony was to the effect that the general treatment of the plaintiff by the defendant was in accord with accepted practice, as was that of Dr. Beebe who adopted a different method. Moreover, the jury by the exercise of common knowledge could not have determined whether it was or was not proper medical practice to go into the wound to mend the severed tendon or nerve during the period of infection or, more specifically, while the defendant was in charge of the case. In addition it is to be noted that there was medical testimony to the effect that it would have been improper to operate until after the danger of infection was passed.

The plaintiff contends that "even admitting there was no direct medical testimony that the defendant did not exercise the proper care and skill, yet the inferences to be drawn from the failure to determine whether or not the muscle and nerve were severed, failure to locate the glass in the wound, failure to regard it as a surgical case, failure to have an x-ray taken, or temperature taken, or to use antitoxin, and other omissions contained in the evidence, are sufficient for a jury to weigh under proper instructions to determine whether or not under all the circumstances the defendant's treatment was that of an ordinary practitioner in the town of Great Barrington."

The plaintiff's only exceptions on evidence not waived in his brief are to the exclusion of the following questions: (1) "Whether or not, Doctor, the exercise of that care ordinarily possessed by the ordinary practitioner in the town of Great Barrington would have required in the case of an injury such as the plaintiff sustained, and assuming those facts to be true, whether or not in the first instance such a wound would have required surgical treatment"; (2) "Assuming the facts to be as testified to by the plaintiff, Doctor, whether or not in your opinion such a wound would be

ordinarily cared for by an ordinary practitioner in the town of Great Barrington"; and (3) "What, in your opinion, Doctor, is the manner in which the ordinary doctor, practising in Great Barrington and using the care and skill of the ordinary practitioner in Great Barrington would have treated a wound of the kind and character as the plaintiff described, assuming the facts to be as described by the plaintiff?" The judge excluded the questions on the ground that they referred to surgical treatment and the doctor interrogated had not qualified as a surgeon. No offer of proof was made after the exclusion. It therefore does not appear that there was prejudicial error, assuming the questions should have been allowed to be answered.

A consideration of all the testimony discloses neither specific nor collective negligent medical treatment of the case by the defendant. The motion for a directed verdict for the defendant was allowed rightly.

*Exceptions overruled.*