**TOMAO** et al.

v.

**A. P. DE SANNO & SON, Inc.**

No. 11108.

United States Court of Appeals,
Third Circuit.

Argued Nov. 3, 1953.

Decided Jan. 4, 1954.

E. Walter Helm, Philadelphia, Pa.
(Raymond A. White, Jr., Philadelphia,
Pa., on the brief), for appellant.

B. Nathaniel Richter, Philadelphia,
Pa. (Richter, Lord & Farage, Charles
A. Lord, Philadelphia, Pa., on the brief),
for appellees.

Before MARIS, STALEY and HAS-
TIE, Circuit Judges.

STALEY, Circuit Judge.

Anthony J. Tomao, the minor plaintiff, lost his left eye when a grinding wheel, which had been manufactured by defendant, disintegrated. In the district court, the jury awarded his parents $15,000 on his behalf and $2,000 in their own right, and defendant appeals.

Anthony was seventeen years old at the time of the accident and a student at a trade school in Massachusetts, where he had studied for about two and one-half years. Desiring to sharpen a rag-cutter, he was given a grinding wheel by the instructor. The wheel had never been used before. It came from the tool-room where there were other like wheels packed in sawdust. Anthony looked at the wheel in the light but saw no cracks in it. He tapped it lightly with the wooden handle of a screwdriver and got a clear ring. Discovering that the hole in the wheel was too large for the spindle, he made a bushing to reconcile the difference. He then mounted the wheel and got a good fit. He stood to one side and turned on the machine. After about one-half minute's operation, the wheel shattered, and part of it struck his left eye.

Plaintiffs introduced a wheel obtained from the trade school in Massachusetts. It was the same size and shape as the disintegrated wheel and had like notations on the label. The wheel was saucer-shaped and was four inches in diameter. On each side, extending out from the hole in the center, was a circular cardboard blotter. The purpose of the blotters was to act as a washer or buffer between the rough surface of the abrasive wheel and the steel flange that grips it. Printed on the blotters were the trade-name of the wheel, defendant's name, and, by abbreviations, the recommended speed of operation and the test speed, with a space after each for filling

in the appropriate figures. Defendant failed to supply the recommended or test speeds on the wheel that exploded.

Defendant's vice-president testified that the wheel could operate safely at a maximum of 5,729 revolutions per minute. It was being operated at 10,000 r. p. m. when it disintegrated.

■ The case was in the district court for the Eastern District of Pennsylvania by virtue of diversity jurisdiction.[1] Thus, we must act as a Pennsylvania court would in dealing with operative facts occurring in Massachusetts.[2] Pennsylvania would refer to the substantive law of the place of the wrong.[3] Consequently, we apply Massachusetts tort law.

■ In Carter v. Yardley & Co., 1946, 319 Mass. 92, 64 N.E.2d 693, 164 A.L.R. 559, Massachusetts gave sweeping acceptance to the doctrine of MacPherson v. Buick Motor Co., 1916, 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696. Thus, the injured ultimate user is no longer denied recovery in Massachusetts for his lack of contractual privity with the negligent manufacturer. With that hurdle out of the way, the jury's verdict in this case was quite proper.

■ One of the universally recognized causes of breakage of a grinding wheel is the extreme centrifugal force to which it is subjected when in operation. This force, of course, increases as the speed of revolution increases. It follows that the user of a wheel must know its probable safe speed of operation. That defendant in fact recognized the necessity of so informing the user was shown by the fact that it did provide blanks on its wheels for disclosing that information. Of even more telling force in this regard was the testimony of defendant's vice-president when called by plaintiffs as on cross-examination. He testified

1. Plaintiffs are citizens of Massachusetts, and defendant is a Pennsylvania corporation.

2. Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L. Ed. 1477.

3. Trowbridge v. Abrasive Co. of Philadelphia, 3 Cir., 1951, 190 F.2d 825; Restatement, Conflict of Laws, Pa.Annot. § 379 (1936).

that for all grinding wheels there is a speed of revolution beyond which it is not safe to go because the wheel will probably break; that it is very important that the user be told what that speed is so that he will stay below it; and it is for this reason that the recommended speed and test speed are printed on the labels of the wheels. In the face of these facts, defendant put into the stream of commerce a grinding wheel whose maximum safe operating speed was below 6,000 r. p. m. without disclosing that information to the user. In view of defendant's omission, what happened here was well within the range of prediction: Anthony Tomao was given a grinding wheel which appeared to be just an ordinary wheel but which would probably shatter if operated at more than 6,000 r. p. m.; he subjected it to ample tests, mounted it on an ordinary grinding machine which spun it at about 10,000 r. p. m.; it exploded, and he was injured. There is nothing in the record to indicate that 10,000 r. p. m. is such an unusually high rate of speed that defendant should not be held to have foreseen such a use of its wheel.

In the Carter case, supra, 64 N.E.2d 693, 696, the Supreme Judicial Court of Massachusetts said:

"In principle, a manufacturer or other person owning or controlling a thing that is dangerous in its nature or is in a dangerous condition, either to his knowledge or as a result of his want of reasonable care in manufacture or inspection, who deals with or disposes of that thing

in a way that he foresees or in the exercise of reasonable care ought to foresee will probably carry that thing into contact with some person, known or unknown, who will probably be ignorant of the danger, owes a legal duty to every such person to use reasonable care to prevent injury to him."

That rule is clearly enough to require that defendant be held in this case.

■ The Carter case, of course, dealt with an article which had been negligently manufactured so that it was defective. In that respect, it differs from the present case since plaintiffs' complaint here is not that the wheel was defectively put together, but that, even if carefully made, it was put out without warning as to its limitations. That difference does not affect the result here, however, because the Carter case did away with the manufacturer's defense of lack of contractual privity and imposed a tort duty. If the manufacturer owes a duty to use due care in making his products, he owes also the companion duty to warn of the latent limitations of even a perfectly made article, the use of which, however, is dangerous if the user is ignorant of those limitations and the manufacturer has no reason to believe that he will recognize the danger.[4]

■ Defendant presents three objections. The first is that it makes these wheels to special order for a special purpose and a special customer and, therefore, it owes no duty of care to one injured by a use in disregard of those specialties.[5]

---

4. "§ 388. Chattel Known to be Dangerous for Intended Use.

One who supplies directly or through a third person a chattel for another to use, is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied;

(b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so." Restatement, Torts § 388 (1934). See also our recent case, Hopkins v. E. I. DuPont de Nemours & Co., 3 Cir., 1952, 199 F.2d 930.

5. Defendant argues the limitations set out in Restatement, Torts § 388, comment *e* and § 395, comment *d* (1934).

Aside from the fact that all the testimony in support of this contention came from defendant's witnesses, and the jury could well have declined to credit it, the argument must fail even on its merits. What evidence there was on this point indicates that the wheel was sold to the United States Government. It was quite foreseeable, therefore, that it might be used by untold numbers of persons, including those who may have acquired it from the Government. Furthermore, its peculiar or special purpose was not at all evident on its face and was not otherwise brought home to those who might have occasion to use it. Without indicating to third persons the special nature of the wheel, we think defendant has not brought itself within the "special purpose" exemption.

Next, defendant says that plaintiffs' proof as to causation failed because the life history of the wheel was not shown. Absent a complete biography, defendant suggests many other causes of the disintegration, all occurring between its release and Anthony Tomao's acquisition of the wheel, for which it could not be held. Lack of a detailed life history, however, is not necessarily fatal to plaintiffs' success. Diesbourg v. Hazel-Atlas Glass Co., 3 Cir., 1949, 176 F.2d 410. See also Trowbridge v. Abrasive Co. of Philadelphia, 3 Cir., 1951, 190 F.2d 825, where we indicated that its purpose was merely to strengthen the inference that it was defendant's negligence that was causal. The Carter case, supra, is again helpful. There the Massachusetts court said, 64 N.E.2d 693, 695:

"* * * [A] finding of negligence * * * was proper if the jury found a greater likelihood, within the interpretation of that expression in Sargent v. Massachusetts Accident Co., 307 Mass. 246, 250, 29 N.E.2d 825, and Smith v. Rapid Transit, Inc., 317 Mass. 469, 470, 58 N.E.2d 754, that the harmful ingredient found its way into the bottle through want of care of the defendant or its servants than through excusable accident or the act of a stranger or some other cause for which the defendant would not be responsible."

Plaintiff's evidence clearly established such a "greater likelihood." There was evidence that the wheel could operate safely at not more than 5,729 r. p. m. and that it was spinning at about 10,000 r. p. m. when it shattered. From this it would be perfectly proper for the jury to conclude that the speed of operation caused the disintegration. This conclusion is immeasurably strengthened by Anthony's testimony that the wheel was brand new, that he inspected it in the light and could see no cracks, and that he tapped it and got a clear ring, thus indicating that there were no physical defects in it just before he mounted it. This was ample evidence of causation.

■ Finally, we are told that Anthony was contributorily negligent as a matter of law in that he started the machine without having the guard in place. There is also a hint that the same result should follow from his failure to wear goggles. The jury, however, could properly infer that mere goggles would not stop the piece of wheel which flew into Anthony's eye. As to the hood, there was a conflict in the testimony that only the jury could resolve. Defendant's witnesses stated that prudent operating procedure requires that the wheel be operated for a full minute before any work is put against it and that, during that minute, the operator should stand off to the side and look at and listen to the wheel, in order to see if it is running true and to hear what vibration there might be. Anthony said he did just that. Although there was defense testimony to the contrary, he testified further that, with the hood in place, it is impossible to see whether the wheel is running true; that there was no necessity for putting the hood in place or wearing goggles until work was actually put against the wheel because the purpose of the hood and goggles was to

protect against sparks, chips, and dust particles caused by the grinding and not to contain or ward off the flying debris from a shattered wheel. These issues of fact were proper matters for the jury to resolve.

The judgment of the district court will be affirmed.