MARY BERARDI & another *vs.* SAMUEL MENICKS.

Middlesex.    December 7, 1959. — February 12, 1960.

Present: WILKINS, C.J., SPALDING, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Negligence,* Dentist.  *Proximate Cause.  Evidence,* Distortion of evidence; Opinion: expert.

Even though a dentist's failure to take X-rays of a patient's teeth before performing an operation to extract an impacted wisdom tooth, which was discontinued without removal of the root of the tooth, would have warranted a finding that the dentist was negligent, a finding that such negligence caused pain and suffering of the patient from hemorrhages and difficulties with her jaw and face following the operation would not have been warranted where, although there was expert testimony as to the consequences of the failure to remove the root of the tooth, there was no expert testimony as to the effect of the lack of X-rays. [400]

At the trial of an action against a dentist by a patient to recover for injuries following an operation by the defendant to extract an impacted wisdom tooth which was discontinued without removal of the root of the tooth, where the defendant testified that "when he performed the extraction, he intended to remove the whole tooth" but that, after the crown was removed, "the operation was discontinued, because of poor respiration and severe hemorrhag[ing]," and the plaintiff testified that following the operation she experienced frequent and serious hemorrhaging, the jury were not entitled to believe the defendant's testimony as to his not removing the root and to disbelieve his testimony of his reason therefor and to find him negligent in not removing it. [400]

Evidence in an action that after the defendant, a dentist, in an extraction of an impacted wisdom tooth of the plaintiff, removed its crown but did not remove its root, the plaintiff, while under the defendant's care, suffered from hemorrhages and difficulties with her jaw and face, not knowing that the root had not been removed, and that the defendant knew of her condition and of the presence of the root in her

jaw but took no steps for its removal, as accepted medical practice would dictate, or to inform her that it was unextracted, would have warranted a finding of negligence on the part of the defendant. [401] A finding in an action that negligence of the defendant, a dentist, in failing to have the root of an impacted wisdom tooth of the plaintiff removed during a period of several weeks while she was under his care after an operation in which he removed the crown of the tooth but not its root and in failing to inform her during that period that the root was unextracted, was the cause of pain and suffering on her part and difficulties with her jaw and face following the operation was warranted by expert medical testimony that it was "probable that this retained root may have contributed" to the plaintiff's condition, that the operation and lancing of the plaintiff's gum a week later "might have [had] a causal — probably . . . [had] a causal relationship" to her condition, and that if the "root had been removed within a matter of weeks after the crown had been removed, the plaintiff probably would not have had any problem." [401-402]

TORT. Writ in the Superior Court dated July 25, 1956.

The action was tried before *Paquet, J.*

*James M. Harkless,* for the plaintiffs.

*Andrew B. Goodspeed,* for the defendant.

SPALDING, J. The sole question for decision is whether, in this action of tort brought in one count by Mary Berardi for malpractice and in another count by her husband for consequential damages, the judge erred in ordering verdicts for the defendant. Mary Berardi will be referred to hereinafter as the plaintiff.

A summary of the relevant evidence shows the following: On January 15, 1955, the defendant, a dentist practising in Cambridge, made an examination of the plaintiff's teeth at his office and informed her that two of her wisdom teeth "could come out and that she could report to the hospital the next day in order to have them extracted." On January 16 the plaintiff entered the Otis General Hospital, and on the following day an operation for the removal of the two teeth was performed by the defendant. During the operation the plaintiff was "under total anesthesia." "Upon discharge from the hospital [on January 18], she was taken home by her husband. That evening, her mouth ached . . . severely and she had great pain. The pain was in the left jaw and was like a throbbing toothache . . . . Her jaw

tightened and she could not eat, and as a result began to feel weak." This condition continued throughout the night and in the morning there was a great swelling in the left side of her face and she was in great pain. She endeavored, without success, to get in touch with the defendant. The swelling and pain continued and she was unable to open her mouth.

During the first part of the week following her discharge from the hospital, the plaintiff "began to hemorrhage from the mouth." Between January 18 and January 28, the plaintiff saw the defendant "quite a few times" at his office. He lanced her gum and told her to "rinse her mouth out with a little salted water," but her condition worsened. Twice during the week following her discharge from the hospital "she began to hemorrhage . . . from the socket on the left side of her jaw" and she "was rushed" to the East Boston Relief Station for emergency treatment. On the morning following the second of these visits, the plaintiff communicated with the defendant, who instructed her to go to the Otis General Hospital. In compliance with this instruction the plaintiff entered the hospital on January 28 and remained there for twelve days.

Upon her discharge from the hospital the plaintiff saw the defendant at his office a few times. In March she was able to resume her regular occupation but "she was still nervous . . . [and] did not feel well and, on occasion, experienced a tightening in her jaw. This would occur every other month or so."

In April 1956 (slightly over a year after her return to work), the plaintiff consulted another dentist, Dr. Kane, who, after taking X-rays of her mouth, referred her to Dr. Irving G. Nathanson, an oral surgeon practising in Boston. Dr. Nathanson took X-rays, which disclosed a "root . . . in the area of the third molar region" and he removed it. This root was in the "socket in . . . [the plaintiff's] left jaw where a wisdom tooth had previously been removed [by the defendant]. Prior to her visit to Dr. Kane's office, the plaintiff was not aware that a tooth root had been retained in the left side of her jaw."

ₐ· The defendant testified that when he first saw the plaintiff he made a diagnosis of "impacted lower left and lower right third molars [and] inability to move jaw." He conceded that "no intra-oral or extra-oral X-rays were taken of , . . [the plaintiff's] teeth prior to the extraction." He testified that the purposes of taking X-rays prior to extraction are to determine the angle in which the teeth are located in the jaw, the curvature of the teeth in the mouth, and the number of roots. The defendant did not know the number of roots at the time he operated on the plaintiff. He stated that "[w]hen he performed the extraction, he intended to remove the whole tooth . . . [but] [a]fter the crowns . . . were removed the operation was discontinued, because of poor respiration and severe hemorrhage." The defendant admitted that it was "common practice to remove the whole tooth"; he did not, however, remove the roots subsequent to the operation on January 17.

The plaintiff's expert was Dr. Nathanson, the oral surgeon who removed the root from the plaintiff's jaw in April, 1956. He testified that he was "familiar with the general practice of dentistry in the Boston and Cambridge community." He also testified that the "recognized procedure for the removal of an impacted lower third molar . . . would be indicated by the findings of the X-ray film." The purpose of the X-ray would be to determine the location of the root. Dr. Nathanson was of opinion that, "[i]f the root had been removed within a matter of weeks after the crown had been removed, the plaintiff probably would not have had any problem."[1]

To entitle the plaintiff to go to the jury there must be sufficient evidence (1) to warrant a finding of negligence on the defendant's part, and (2) to warrant a finding that there was a causal connection between such negligence, if found, and the plaintiff's injuries.

---

[1] There is no merit in the defendant's contention that Dr. Nathanson was not qualified to testify as to the standards of care and skill to be exercised by a general practitioner in Cambridge. Dr. Nathanson's testimony was admitted without objection. Moreover, it is plain that his testimony had reference to the general practice of dentistry in the Boston and Cambridge area.

The defendant's failure to take X-rays could have been found not to have been in accordance with the standard procedure in cases involving the extraction of impacted wisdom teeth, and we assume that such failure would have warranted a finding of negligence. But negligence is without legal consequence unless it is a contributing cause of the injury. *Baggs* v. *Hirschfield*, 293 Mass. 1, 3. The evidence reveals no causal relation between the failure to take X-rays and the injury of which the plaintiff complains. The testimony of Dr. Nathanson related to the consequences of the defendant's failure to remove the whole tooth; there was no expert testimony bearing on the effect of the lack of X-rays.

The defendant admitted that normal procedure would require the extraction of the whole tooth. He testified, however, that he discontinued the operation after he had removed the crown because of the plaintiff's "poor respiration and severe hemorrhag[ing]." On the plaintiff's own testimony it is clear that, during the ten days following the operation, she experienced frequent and serious hemorrhaging. We are of opinion that it would be a distortion of the evidence to say that the jury might believe that portion of the defendant's testimony concerning his failure to remove the roots and disbelieve the reason given for such failure. See *Marquandt* v. *Boston Young Women's Christian Assn.* 282 Mass. 28, 31. There is no evidence that a dentist, faced with the conditions that confronted the defendant, would have done other than what the defendant did — namely, discontinue the operation.

We pass to the defendant's conduct subsequent to the operation. The defendant was required to possess and exercise the skill and diligence of dentists in the locality where he practised. *Ernen* v. *Crofwell*, 272 Mass. 172, 175. *Borysewicz* v. *Dineen*, 302 Mass. 461. There was evidence that following the operation, while still being treated by the defendant, the plaintiff had serious trouble with her jaw. There was a "great swelling in the left side of her face"; she had difficulty in opening her mouth; she had several hemor-

rhages; and she was in great pain. It appears that the plaintiff was under the defendant's care during the period between her first discharge from the Otis General Hospital (January 18) and her readmission to that hospital (January 28) and that she was under his care during the twelve day period following her readmission. After her second discharge from the Otis General Hospital the plaintiff saw the defendant "at his office on a few occasions." Yet the defendant, with knowledge of these facts and of the fact that roots still remained in the plaintiff's jaw, took no steps to remove them, or so the·jury could have found.[1] And it could have been found that the defendant did not inform the plaintiff of the unextracted roots, for she testified that she was "not aware that a tooth root had been retained in the left side of her jaw." We are of opinion that the defendant's conduct subsequent to the operation in failing to remove the roots or in failing to inform the plaintiff that they had not been removed could have been found to be negligent. If for any reason the removal of the roots was an operation which the defendant was not competent to perform he should have advised the plaintiff to employ someone more skilled in this type of work. *Mallen* v. *Boynton,* 132 Mass. 443, 446. *Vigneault* v. *Dr. Hewson Dental Co.* 300 Mass. 223, 227–228.

It remains to consider whether there was sufficient evidence to warrant a finding that there was a causal connection between the negligence of the defendant, if found, and the plaintiff's injuries. Manifestly, this is a question that a jury could determine only with the aid of expert opinion. *Bouffard* v. *Canby,* 292 Mass. 305, 309. *Vartanian* v. *Berman,* 311 Mass. 249, 253. *Josi's Case,* 324 Mass. 415, 417–418. Compare *Malone* v. *Bianchi,* 318 Mass. 179, 182. But such evidence was not lacking. Dr. Nathanson testified that "It is probable that this retained root may have con-

---

[1] There was, to be sure, testimony from the defendant to the effect that after the plaintiff had ceased seeing him he endeavored without success to communicate with her several times for the purpose of permitting him to complete his dental care by removing the roots. But the jury were not required to believe this evidence.

tributed to this . . . [plaintiff's] condition." Later he testified that the operation and the lancing of the gum a week later "might have [had] a causal — probably . . . [had] a causal relationship," and that if the "root had been removed within a matter of weeks after the crown had been removed, the plaintiff probably would not have had any problem." The defendant urges that this evidence shows no more than a possibility of causal connection. Where the relation of cause and effect between two facts has to be proved, the testimony of an expert that such relation exists or probably exists is sufficient; but the testimony of an expert that such relation is possible, conceivable or reasonable, without more, is not enough. *DeFilippo's Case,* 284 Mass. 531, 534–535. *Halnan* v. *New England Tel. & Tel. Co.* 296 Mass. 219, 223–224. *Josi's Case,* 324 Mass. 415, 418. *Hachadourian's Case, ante,* 81, 86. We are of opinion that Dr. Nathanson's testimony, read as a whole, showed a probability of causal relation rather than a mere possibility of such relation.

*Exceptions sustained.*