ROBERT H. HAGGERTY vs. RAYMOND McCARTHY.

Middlesex.    November 8, 1961. — April 10, 1962.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE,
CUTTER, KIRK, & SPIEGEL, JJ.

*Negligence, Doctor. Evidence, Opinion: expert. Deceit.*

In an action against a surgeon who, in performing an appendectomy on
the plaintiff, left a vestige of the appendix which ruptured some eight
years later, a finding of negligence on the part of the defendant in that
at the time of the operation he failed to inform the plaintiff that he had
doubt whether he had removed the appendix completely was not war-
ranted in the absence of expert medical testimony showing that ac-
cording to prevalent standards of practice in the community a remaining
vestige of the appendix, as the defendant should have known, would
create such a definable and substantial risk to the plaintiff as to require
disclosure to him of the defendant's doubt.    [139–142]   SPIEGEL, J.,
with SPALDING & WHITTEMORE, JJ., dissenting.
Evidence at the trial of an action that the defendant, a surgeon, performed
an appendectomy on the plaintiff but had doubt at the time whether
he had removed the appendix completely, that following the operation,
in response to the plaintiff's question as to why the operation had taken
so long, the defendant replied "it had taken a long time to find the
appendix," and that the defendant "made no further report to . . .
[the plaintiff] then or later about the operation or the appendix" did
not warrant a finding that the defendant was guilty of deceit in that he
failed to inform the plaintiff of his doubt where it was not shown that
in the circumstances the defendant had a duty to disclose his doubt to
the plaintiff.   [142]

TORT.   Writ in the Superior Court dated December 9,
1958.

The action was tried before *Goldberg, J.*

The case was argued in November, 1961, before *Wilkins,*
C.J., *Williams, Whittemore, Cutter, & Spiegel,* JJ., and
afterwards was submitted on briefs to all the Justices.

*Robert H. Haggerty* of New York, pro se, (*Robert D.
Kilmarx* with him,) for the plaintiff.

*John F. Dunn,* for the defendant.

CUTTER, J.  Count 1 of the declaration in an action of

tort alleged that the defendant, a surgeon, failed to remove the plaintiff's appendix completely during an operation, on May 1, 1949, was doubtful whether he had done so, and negligently failed to inform the plaintiff of his doubts, with the consequence that the plaintiff later "provided an inaccurate . . . medical history to . . . [a] physician whom he subsequently consulted regarding . . . abdominal pains, and accordingly was unnecessarily subjected to a series of . . . operations commencing . . . about January 23, 1957 . . . to his damage." Count 2 recited essentially the same averments with the addition of allegations that the surgeon "represented . . . that the operation had been a complete success, the appendix completely removed and the danger of further appendicitis attacks removed; [and] that the plaintiff relied on . . . [the surgeon's] failure to . . . inform him as to his doubt," to the plaintiff's damage.

The statute of limitations was pleaded in the answer. See G. L. c. 260, § 4 (as amended through St. 1955, c. 235, § 1; see St. 1960, c. 271). The writ was dated December 9, 1958.

At the close of the plaintiff's evidence, the surgeon rested without introducing evidence. The case is here on the plaintiff's exception to the direction of a verdict for the surgeon on each count. The evidence is stated in its aspect most favorable to the plaintiff.

The operation on May 1, 1949, lasted about two hours. The surgeon in notes described the operation as follows: "Right Rectus incision. No free fluid in abdomen. Small intestine distended. Cecum tied down. *Appendix finally found* Retrocecal and at the bottom of a mushy area. *The appendix was covered with adhesions, was very small* and was tied down. . . . [T]he tissues were very friable and the clamps tore off and there was brisk bleeding for a few minutes. Vessels reclamped and tied. *Appendix removed to what appeared to be the base, but there were such dense adhesions that it was impossible to be certain and the raw oozing area at the bottom of the space was considerable.* A piece of oxycel gauze was placed at the bottom of wound

over the ooze. It was dry on closing. Abdomen closed in layers with great difficulty because of [s]pasm and [t]ightness which was finally overcome with [e]ther and curare. Patient left O[perating] R[oom] in good condition'' (emphasis as it appears in record). Following the operation, the surgeon informed the plaintiff that the operation had been long because ''it had taken a long time to find the appendix.'' The surgeon ''made no further report to . . . [the plaintiff] then or later about the operation or the appendix.''

The plaintiff was discharged from the hospital approximately ten days after the operation. He ''had no abdominal operations or . . . pain . . . until on or about January 14, 1957,'' nearly eight years later. As a result of symptoms then developing, he consulted Dr. Meyer, a general practitioner in Schenectady, where the plaintiff then resided. Dr. Meyer testified that the plaintiff's symptoms ''were consistent with several abdominal disorders, but were particularly suggestive of appendicitis.'' He, however, noted the ''rectus scar, and . . . [the plaintiff] reported . . . that his appendix had been removed . . . in 1949.'' As a consequence Dr. Meyer omitted certain ''standard medical tests in cases of suspected appendicitis, and diagnosed . . . [the] illness as gastro-enteritis or 'intestinal grippe.' ''

The pain continued during the following week increasing to acute on January 23. Dr. Breault, a surgeon, was consulted. He ''operated on . . . [the plaintiff] locating a large abscess . . . of infectious pus, together with considerable local peritonitis, caused by a ruptured appendix. He drained the abscess, but was unable to remove the ruptured vestige of the appendix because of the wide spread infection.'' He also stated ''that the abscess would not have formed, and the operation to drain it would not have been necessary, if the appendicitis condition had been discovered and the diseased appendix removed before it had ruptured.''

Further operations occurred. These were ''to relieve

post-operative . . . [difficulties] caused by the prior infectious condition discovered during the January 23rd operation." In Dr. Breault's opinion, they would not have been necessary had the January, 1957, condition been discovered before the appendix ruptured. In one of the later operations, "an elective appendectomy . . . to eliminate the danger of further appendicitis attacks," the "vestige of the appendix . . . slightly under . . . [one] inch long, was removed." The plaintiff "alleges no breach of duty with respect to the performance of the . . . appendectomy of May, 1949," and places "no reliance on an allegation of a concealment of any such breach of duty."

1. Count 1 essentially alleges negligence on the part of the surgeon in failing to inform the plaintiff of the surgeon's doubts at the time of the 1949 operation. It was, of course, the defendant's duty to exercise the degree of care and skill which members of the medical profession in the community commonly possess and exercise in like circumstances. See *Semerjian* v. *Stetson*, 284 Mass. 510, 512–513, 514–515; *Berardi* v. *Menicks*, 340 Mass. 396, 400–402.

Dr. Breault testified that "it is standard appendectomy procedure to remove the appendix completely, leaving no stump or vestige at the cecum." This testimony, however, falls short of being evidence of the knowledge and understanding in 1949 of members of the medical profession in the community about the extent of risk to the patient involved where a small vestige of appendix was not removed.

"It is only in exceptional cases that a jury instructed by common knowledge and experience may without the aid of expert medical opinion determine whether the conduct of a physician toward a patient is violative of the special duty which the law imposes as a consequence of this particular relationship." See *Bouffard* v. *Canby*, 292 Mass. 305, 309; *Tallon* v. *Spellman*, 302 Mass. 179, 183; *Kiley* v. *Dervin*, 314 Mass. 478, 483–484; *Riggs* v. *Christie*, 342 Mass. 402, 405–407, and cases cited. See also *Vigneault* v. *Dr. Hewson Dental Co.* 300 Mass. 223, 225–227. The exceptional cases seem to be those "where the negligence and harmful results are sufficiently obvious as to lie within common knowledge."

*Cyr.* v. *Giesen,* 150 Maine, 248, 252.   See *Toy* v. *Mackintosh,* 222 Mass. 430, 431–432; *Marangian* v. *Apelian,* 286 Mass. 429, 436–437; *Malone* v. *Bianchi,* 318 Mass. 179, 181–182. See also *Beane* v. *Perley,* 99 N. H. 309, 310–311; Wigmore, Evidence (3d ed.) § 2090; Annotation, 141 A. L. R. 5, 6, 12. Cf. *Traverse* v. *Wing,* 256 Mass. 320, 321–323.

The plaintiff relies to some extent upon the recent case of *Berardi* v. *Menicks,* 340 Mass. 396, 399–401, where this court considered the conduct of a dentist in connection with wisdom teeth extractions.   The dentist (p. 400) "admitted that normal procedure would require the extraction of the whole tooth."   There was evidence that "following the operation, while still being treated by the . . . [dentist], the plaintiff had serious trouble with her jaw."   The jury could have found (p. 401) that the dentist had "knowledge . . . that roots still remained in the plaintiff's jaw [and] took no steps to remove them," and also that the dentist "did not inform the plaintiff of the unextracted roots." There was medical evidence of causal connection (pp. 401–402) between the conduct of the dentist and injuries to the plaintiff.   The dentist's own testimony was that "he endeavored without success to communicate with . . . [the plaintiff] several times for the purpose of permitting him to complete his dental care by removing the roots."   The aggregate professional testimony mentioned above adequately indicated the existence of a significant risk in leaving the roots unremoved.

We do not have before us a case where there is certainty of a foreign object or a dangerous physical organ left in a patient during an operation and it is obvious that a substantial and definable risk has been created.   Cf. *Ernen* v. *Crofwell,* 272 Mass. 172, 175; *Dietze* v. *King,* 184 F. Supp. 944, 948–949 (E. D. Va.); *Morrison* v. *Acton,* 68 Ariz. 27, 35; *Slimak* v. *Foster,* 106 Conn. 366, 367, 371 (but see *Frogge* v. *Shugrue,* 126 Conn. 608, 611); *Smith* v. *Zeagler,* 116 Fla. 628, 632; *Taylor* v. *Milton,* 353 Mich. 421, 425–426; *Benson* v. *Dean,* 232 N. Y. 52, 56 (needle fragment); *Hinkle* v. *Hargens,* 76 S. D. 520.   Cf. also *Reid* v. *United States,* 224 F. 2d 102, 103–104 (5th Cir.), *S. C.* after trial on the merits, sub

nom. *United States* v. *Reid,* 251 F. 2d 691, 692–693 (5th Cir.); *Shutan* v. *Bloomenthal,* 371 Ill. 244, 254; *Wambold* v. *Brock,* 236 Iowa, 758, 761, 763. On the contrary, without expert testimony laymen, including the jury, the trial judge, and ourselves, could not be, and are not, in a position to determine what the risk and the requirements of professional conduct in the circumstances were in the neighborhood of Boston in 1949. Of their own knowledge laymen could not appraise whether, even if a vestige did remain after the 1949 operation, it created a definable risk then regarded as sufficiently substantial by practitioners in the locality so that good practice called for discussion of the uncertainty with the patient. This was a medical matter about which laymen should not guess. It was incumbent on the plaintiff to show by expert medical testimony that an incomplete removal of the appendix in the circumstances created a definable and substantial medical risk and that this was known, or should have been known, to the surgeon. Only upon such a showing would there be any basis for finding a duty of discussion with and disclosure to the patient. The situation called for expert guidance. See *Ramsland* v. *Shaw,* 341 Mass. 56, 59–62. Cf. *Stewart* v. *Worcester Gas Light Co.* 341 Mass. 425, 434–435. This does not seem to us a case where "even the merest tyro would know [the surgeon's conduct] was improper" (see *Ballance* v. *Dunnington,* 241 Mich. 383, 387) but one where professional knowledge and judgment are involved. A majority of the court think that this situation stands upon a different footing from the matters which, in certain cases already cited, have been treated as "sufficiently obvious as to lie within common knowledge." The absence of expert evidence of the existence and extent of any definable risk renders irrelevant any discussion of a special professional duty (see *Dietze* v. *King,* 184 F. Supp. 944, 948–949 [E. D. Va.]; *Di Filippo* v. *Preston,* 3 Storey [Del.] 539, 549–550) or general duty to warn of known and substantial dangers. Cf. *Cutter* v. *Hamlen,* 147 Mass. 471, 475; *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501, 511; *Thorneal* v. *Cape*

*Pond Ice Co.* 321 Mass. 528, 532; *Tomao* v. *A. P. De Sanno & Son, Inc.* 209 F. 2d 544, 546 (3d Cir.), purporting to apply Massachusetts law.

2. Count 2 sounds in deceit. There was evidence, in addition to what has already been summarized, that, following the operation, the plaintiff asked the surgeon why the operation had taken so long and that the surgeon (who "made no further report to . . . [the plaintiff] then or later about the operation or the appendix") replied "that it had taken a long time to find the appendix." There is no evidence of any affirmative misrepresentation, cf. *Allison* v. *Blewett,* 348 S. W. 2d 182 (Tex. Civ. App.), or any statement of fact, without disclosure of other known facts which might affect that statement. Cf. *Burns* v. *Dockray,* 156 Mass. 135, 137–138. Cf. also *Yorke* v. *Taylor,* 332 Mass. 368, 371. Any contention that there was deceit must rest upon the surgeon's failure to comply with some duty to disclose his doubts. See *Windram Mfg. Co.* v. *Boston Blacking Co.* 239 Mass. 123, 126; *Stetson* v. *French,* 321 Mass. 195, 198–199. We think that whether there was a duty to disclose depends upon whether there was, in the circumstances, conduct which would have been noncompliance with the special duty (see *Vartanian* v. *Berman,* 311 Mass. 249, 253) created by the doctor-patient relationship. As has been stated in the discussion of count 1 above, no expert medical evidence has established the existence and extent of any definable risk, which would be the foundation of whatever obligation the surgeon had in the circumstances in the community in 1949, so that it could be ascertained whether the surgeon's conduct was inconsistent with that duty.

3. A verdict for the surgeon was properly directed on each count. We do not reach questions based upon the statute of limitations.

*Exceptions overruled.*

SPIEGEL, J. (with whom Spalding, J., and Whittemore, J., concur) dissenting. The reasoning upon which the opinion appears to be based is that "without expert testimony laymen, including the jury, the trial judge, and ourselves, could

not be, and are not, in a position to determine what the risk and the requirements of professional conduct in the circumstances were in the neighborhood of Boston in 1949.''

The court then rules that as a prerequisite to recovery the plaintiff must prove, by expert medical testimony, a ''definable risk'' regarded as ''sufficiently substantial by practitioners in the locality so that good practice called for discussion of the uncertainty with the patient.''

The plaintiff's ailment was diagnosed as acute appendicitis. He entered the hospital and was operated on for the removal of his appendix. The defendant, in his own handwritten description and over his signature wrote ''[a]ppendix removed to what appeared to be the base, but there were such dense adhesions that it was impossible to be certain.''

After the operation the plaintiff inquired of the defendant why it had taken so long to complete the operation and the defendant in reply stated that it had taken a long time to find the appendix.

That medical science has made extraordinary advances in recent years is common knowledge. It is equally true that the public is far better educated and far better informed about medicine and surgery than ever before. We are not living in the nineteenth century. An operation for the removal of an appendix is quite common and I doubt that it arouses any great apprehension in the mind of the patient. The plaintiff having undergone the operation had every right to believe that his entire appendix had been removed.

As to the extent of the risk it should be borne in mind that it is the patient who is taking the risk, not the surgeon, nor a group of surgeons in the particular locality where the operation takes place. If an appendix requires removal it would seem to be a corollary that the failure to remove the complete organ might result in subsequent difficulties.

This is not a case of a dread illness. There is not the slightest suggestion that the psychological condition of the patient was such that the surgeon was justified in with-

holding the fact that he was uncertain as to whether he had removed the complete appendix.  The failure to disclose this fact was not in the interest of the plaintiff.  As to information revealed in diagnosis it has been said that "no medical privilege should be recognized to withhold the diagnosis in ordinary cases where the usual patient would feel entitled to have the information as a basis for charting his course and there being no apparent grounds for supposing that a disclosure of the truth would engender in the patient reactions dangerous to his health or life."  Smith, Therapeutic Privilege to Withhold Specific Diagnosis from Patient Sick with Serious or Fatal Illness, 19 Tenn. L. Rev. 349, 350–351.  It is readily understandable why a surgeon may withhold information from a patient afflicted with cancer.  However, we are not confronted with that type of situation in an operation for the removal of an appendix. Even if the possibility of the need for further medical treatment is quite remote, I can think of no sound reason for not disclosing the information to the patient.  This court has held that for an insured to misrepresent the existence of cancer increases the risk of loss as a matter of law.  See Lennon v. John Hancock Mut. Life Ins. Co. 339 Mass. 37, 39. Expert medical testimony was not required for the court to reach that conclusion.  It should not then, as a matter of logic, require expert medical testimony in order for a jury to decide whether the surgeon should have informed the plaintiff that his appendix might not have been removed.

I am unable to determine from the opinion whether there is imposed upon the plaintiff the additional burden of proving that "the requirements of professional conduct in the circumstances . . . in the neighborhood of Boston in 1949" required the defendant to make a disclosure to his patient.

Under the circumstances of this case, I do not believe that evidence of the prevailing medical practice in the neighborhood was necessary to show that the defendant had a duty to disclose to the plaintiff his doubts as to the complete removal of the appendix.  Even if there had been evidence that the practice was to maintain silence under these circumstances, this court should not be foreclosed from impos-

ing a duty to disclose. "Courts must in the end say what is required; there are precautions so imperative that even their universal disregard will not excuse their omission." L. Hand, J., in *The T. J. Hooper,* 60 F. 2d 737, 740.

In my opinion the case at bar is among the class of exceptional cases where a breach of the duty owed by the physician to his patient may be ascertained without the assistance of expert medical testimony. See *Malone* v. *Bianchi,* 318 Mass. 179, 182, and cases cited.

The remaining question, which the majority opinion did not reach, is whether the plaintiff's cause of action is barred by the applicable statute of limitations. G. L. c. 260, § 4. The defendant contends that since the operation was performed in May, 1949, and the writ was dated December 9, 1958, the two year statute of limitations is a bar to recovery.

That statute provides that the period within which an action must commence begins when "the cause of action accrues."

This is not a case where a foreign body had negligently been left in the person of the plaintiff during the course of an operation. In such cases it has been held that a cause of action arises at the time of the operation despite the fact that substantial damage may not occur until after the statutory period has run. See *Capucci* v. *Barone,* 266 Mass. 578, 581. It should be noted that, in most cases of that nature, the plaintiff would in all likelihood know of his injury before his remedy is barred by the statute of limitations.

In the case we are here considering, the first intimation that the plaintiff could have had regarding the failure to remove the complete appendix was when he first experienced abdominal pain on or about January 14, 1957.

To hold that the statute of limitations begins to run prior to that date is to charge the plaintiff with knowledge of facts well nigh impossible for him to discover until he began to feel pain in the region of the abdomen. The "inherently unknowable" should not bar the plaintiff of his right to compensation. See *United States* v. *Reid,* 251 F. 2d 691, 695 (5th Cir.) ; *Urie* v. *Thompson,* 337 U. S. 163, 169.

I would sustain the plaintiff's exceptions.