Haggerty, S. Jane, J.
This is an action brought by the plaintiffs, Jean L. Morrisey (“Mrs. Morrisey”) and Michael D. Morrisey (“Mr. Morrisey”) for medical malpractice claims against defendants, Devora B. Lieberman, M.D. (“Lieberman”), Isaac E. Stillman, M.D. (“Stillman”), Benjamin P. Sachs, M.D. (“Sachs”), Harold F. Dvorak, M.D. (“Dvorak”), and Beth Israel Deaconess Medical Center (“Beth Israel”). The plaintiff alleges ten claims against the various defendants. The matter is before this court on motions for summary judgment brought by Lieberman, Stillman, Sachs, and Dvorak on nine of the claims. Lieberman moves for summary judgment on Counts I (Negligence), II (Breach of Contract), III (Negligence — Informed Consent), and VI (Negligence — Emotional Distress). Still-man moves for summary judgment on Counts IV (Negligence — Breach of Contract), V (Negligence — Informed Consent), and VII (Negligence — Emotional Distress). Sacks moves for summary judgment on Count VTII (Negligent Hiring and Supervision), and Dvorak on Count IX(Negligent Hiring and Supervision).
For the reasons set forth below, the defendants’ motions for summary judgment are ALLOWED.

BACKGROUND

This dispute arises as the result of the manner in which the remains of the plaintiffs’ unborn child were disposed of. At this summary judgment stage, the facts are reported in the light most favorable to the plaintiff. Anderson Street Associates v. City of Boston, 442 Mass. 812, 816 (2004), citing Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).
Mrs. Morrisey went to a satellite facility of Beth Israel in May of 1997. It was determined that she was nine weeks pregnant. On June 3, 1997, she returned to the facility and was informed, after an ultrasound, that her baby had died. The Morriseys went to the Ambulatory Surgical Unit for removal of the fetus on the following morning. Lieberman informed Mr. Morrisey that his wife was fine after the procedure was over. Lieberman allegedly told Mr. Morrisey that the cause of death was “soft tissue,” and that they would “talk later.”
On June 10th, Mr. Morrisey called Lieberman to inquire about the sex of the baby. Lieberman responded that the sex was unknown. Lieberman also informed Mr. Morrisey that the remains had been disposed of as medical waste. No written policy existed at Beth Israel regarding the disposal of fetal remains prior to twenty weeks of gestation. Sachs was Lieberman’s direct supervisor, and served as Chief of Obstetrics. Stillman, a pathologist at Beth Israel, made the decision to dispose of the fetal remains. Dvorak served as Stillman’s supervisor.
Mrs. Morrisey claims that she became deeply emotionally distressed and required outpatient psychiatric treatment after being told about the disposal of the fetal remains. Mr. Morrisey states that his wife’s post traumatic stress syndrome and behavior was an emotional strain on him. Mrs. Morrisey was referred for treatment for her emotional problems. The Morriseys are distraught that they were not told the sex of their baby, nor were they given the opportunity to properly dispose of the remains in a manner of their choosing.
The plaintiffs notified the Massachusetts Department of Public Health (“DPH”) about the incident, and DPH determined that Beth Israel was in violation of state law because the plaintiffs were not informed of their rights to direct burial, entombment or cremation of the fetal remains prior to the disposal of the remains. The plaintiffs also were not informed, in writing, of the hospital’s policy relating to disposal of fetal remains.

DISCUSSION

Summary judgment is appropriate where the “pleadings, depositions, answers to interrogatories, *656 and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Highland Ins. Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997), citing Mass.R.Civ.P. 56(c). In a case such as this, where the opposing party will have the burden of proof at trial, the moving parties are entitled to summary judgment if they can demonstrate by reference to these materials, “unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
A. Dr. Lieberman
The plaintiffs have brought three separate claims alleging negligence on the part of Lieberman. The claims are based on allegations that she negligently treated Mrs. Morrisey, failed to inform her of alternatives to and risks and consequences to the choice of treatment, and disposed of the fetal remains in a manner which caused Mrs. Morrisey emotional distress. For purposes of these claims, the burden is on the Morriseys “to establish a causal connection” between the negligence of Lieberman and any damages they suffered. Glicklich v. Spievack, 16 Mass.App.Ct. 488,492 (1983), citing Semerjian v. Stetson, 284 Mass. 510, 512 (1933). In a medical malpractice case, the causal connection “must generally be established by expert testimony that the injuiy sustained was more probably than not a result of the doctor’s negligence.” Id., citing Berardi v. Menicks, 340 Mass. 396, 402 (1960). Speculative testimony as to whether a relation between the alleged negligence and the injuries are “possible, conceivable, or reasonable, without more, is insufficient to meet this burden.” Id. at 492-93, citing DeFilippo’s Case, 284 Mass. 531, 534-35 (1933). The SJC has held that “(i]t is only in exceptional cases that a jury instructed by common knowledge and experience may without the aid of expert medical opinion determine whether the conduct of a physician toward a patient is violative of the special duty which the law imposes as a consequence of this particular relationship.” Forlano v. Hughes, 393 Mass. 502, 507 (1984), quoting Haggerty v. McCarthy, 344 Mass. 136, 139 (1962).
“(A) physician owes to his patient the duty to disclose in a reasonable manner all significant medical information that the physician possess or reasonably should possess that is material to an intelligent decision by the patient whether to undergo a proposed procedure.” Precourt v. Frederick, 395 Mass. 689, 690 (1985), quoting Harnish v. Children’s Hosp. Medical Center, 387 Mass. 152, 155 (1982). The determination of what is material is based on “the significance a reasonable person, in what the physician knows or should know is his patient’s position, would attach to the disclosed risk or risks in deciding whether to submit or not to submit to surgeiy or treatment.” Id., citing Harnish, 387 Mass, at 156.
In this case, the Morriseys have not presented any expert testimony in support of their negligence claims against Lieberman. Such testimony could be extremely helpful to a juiy in analyzing whether the appropriate standard of care was met, and whether there was a causal connection between any alleged negligent conduct and the damages asserted by Mr. and Mrs. Morrisey. With regard to Counts I and III, considering that this does not appear to be an exceptional case, the failure to provide an expert opinion is fatal to the claims.
The plaintiffs submit that an expert opinion is unnecessary based on the findings of the DPH for purposes of succeeding on the claims relating to the disposal of the fetal remains. The DPH determined that the failure to inform the plaintiffs of their rights prior to disposing of the fetal remains was in violation of state law. It is undisputed that there was no policy or procedure in place regarding the disposal or burial of fetal remains at less than 20 weeks. In fact this was the basis for the DPH’s determination that Beth Israel was violating the law. However, Lieberman was acting pursuant to the policies of Beth Israel at the time of the events. Thus imposing liability on Lieberman individually would be unfair, particularly in the guise of alleged negligence when she acted pursuant to Beth Israel’s policies. Therefore, Count VI based on Mr. Morrisey’s claim of emotional distress is non-actionable as against Lieberman.
The Morriseys allege a breach of contract on the part of Lieberman based on her alleged express and implied warranty to perform and render professional services in accordance with accepted standards for the practice of obstetrics and gynecology, and that she would possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing her specialty.
With regard to breach of contract claims between patients and physicians in the Commonwealth, the SJC has stated that such actions are “considered a little suspect, and thus we find courts straining sometimes to read the pleadings as sounding only in tort for negligence, and not in contract for breach of promise, despite sedulous efforts by the pleaders to pursue the latter theory.” Sullivan v. O’Connor, 363 Mass. 579, 582 (1973). While not completely prohibiting such claims, the “law has taken the middle of the road position of allowing actions based on alleged contract, but insisting on clear proof.” Id. at 583. The Court later stated that Sullivan represented a change from prior Massachusetts law which previously had recognized a right of action “ ‘in contract’ to recover for breach of a physician’s implied promise not to commit malpractice.” Salem Orthopedic Surgeons, Inc. v. Quinn, 377 Mass. 514, 516 (1979).
*657 In this case, the Morrisey’s allegations in Count II essentially represent a claim of implied warranty that Lieberman would render services in accordance with industry standards, and that she was duly qualified to perform services. The Morriseys have not provided the requisite clear proof to proceed on a claim “in contract” based upon their allegations. While the plaintiffs argument regarding the standard of care and lack of written policies can potentially be a foundation for valid claims against Beth Israel, it is insufficient for purposes of demonstrating a breach of contract on the part of Lieberman.
B. Dr. Stillman
The plaintiffs have brought three separate claims based in negligence against Stillman. They allege that Stillman expressly and impliedly warranted to perform and render professional services in accordance with accepted standards for the practice of medicine, and to possess and exercise the degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing in his specialty. The Morriseys claim that Stillman breached these warranties and that Mrs. Morrisey sustained severe emotional distress and permanent physical injuries as a result. The Morriseys further allege that Stillman knew or should have known of the risks, potential complications and alternatives regarding the disposal of the fetal remains, and that Stillman did not properly inform them of these factors resulting in emotional and personal injuries to Mrs. Morrisey. The final claim against Stillman is based on alleged negligent and careless treatment of Mrs. Morrisey and the fetal remains, which resulted in reasonably foreseeable injuries by Mr. Morrisey, including severe emotional distress and permanent physical injuries.
As previously discussed, the SJC has required “clear proof’ for contract claims brought by a patient against a physician, and have considered such claims “suspect." See Sullivan, 363 Mass. 579. A claim for breach of express warranty differs from a negligence claim “because the plaintiff must demonstrate that the defendant promised a specific result.” Anthony’s Pier Four, Inc. v. Crandall Dry Dock Engineers, Inc., 396 Mass. 818, 823 (1986). Further, a claim based on an implied promise to essentially not commit malpractice is no longer recognized in the Commonwealth. See Salem Orthopedic Surgeons, Inc., 377 Mass. 514.
In essence, the plaintiffs offer the same set of facts for purposes of claims based in negligence and contract. They have not provided any clear proof that Stillman promised a specific result, and the language of the implied warranty claim is ultimately an allegation that Stillman warranted not to commit malpractice. Therefore, the claim for breach of contract can not succeed on the merits.
For purposes of the informed consent argument, the SJC has held that “(i]t is only in exceptional cases that a juxy instructed by common knowledge and experience may without the aid of expert medical opinion determine whether the conduct of a physician toward a patient is violative of the special duty which the law imposes as a consequence of this particular relationship.” Forlano, 393 Mass. at 507, quoting Haggerty, 344 Mass, at 139. In relation to the claim for negligence based on alleged emotional distress suffered by Mr. Morrisey, the burden is on the plaintiffs “to establish a causal connection” between the negligence of Stillman and any damages they suffered. Glicklich, 16 Mass.App.Ct. at 492, citing Semeijian, 284 Mass. at 512. This causal connection “must generally be established by expert testimony that the injury sustained was more probably than not a result of the doctor’s negligence.” Id., citing Berardi, 340 Mass. at 402. Mere speculative testimony is insufficient. See Id. at 492-93, citing DeFilippo’s Case, 284 Mass. at 534-35.
The Morriseys again have failed to present expert testimony in support of negligence claims against a physician, Stillman in this instance. This expert testimony might assist the court or jury in determining whether the appropriate standard of care was met, and whether there was a causal connection between any alleged negligent conduct and the damages asserted by Mr. and Mrs. Morrisey. The Morriseys merely allege that as the pathologist, Stillman was required to know the law regarding the disposal of fetal remains, and is therefore liable to them in negligence. Stillman did not violate any policy of Beth Israel at the time of the events giving rise to this dispute. Further, this case does not contain exceptional circumstances where a juiy could make such determinations without the help of an expert opinion. See Forlano, 393 Mass. at 507. In light of these considerations, the plaintiffs do not have valid claims under Counts V or VII against Stillman.
C. Dr. Sachs
Count VIII alleges negligent hiring and supervision on the part of Sachs. The plaintiffs claim that included in Sach’s duty of care was a duty to exercise the degree of care, skill and judgment of a competent physician in hiring, retention and supervision of personnel providing obstetrical and gynecological medical services at Beth Israel. The Morriseys also allege a duty on the part of Sachs to exercise such care in establishing procedures to assure the consistency and quality of all duties provided in the obstetrical and gynecological services. As a result of a failure to comply with these duties, the Morriseys assert that personal injuries, as well as severe emotional injuries were proximately caused to Mrs. Morrisey.
“A claim for negligent hiring requires evidence that the employer failed to exercise due care in the selection of an employee, evidence that the employer knew or should have known that the employee who was hired was unfit and posed a danger to others who would come into contact with the employee during the em *658 ployment, and evidence that the employer’s failure proximately caused the injuiy of which the plaintiff complains.” Armstrong v. Lamy, 938 F.Sup. 1018, 1046 (D.Mass. 1996). An employer should use due care to avoid selecting employees known to be unfit to work with the public, and knowledge of past acts of impropriety can provide insight as to a potential employee shortcomings. See Foster v. Loft, Inc., 26 Mass.App.Ct. 289, 290-91 (1988). With regard to negligent retention, it “occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge or reassignment.” Foster, 26 Mass.App.Ct. at 291, quoting Garcia v. Duffy, 492 So.2d 435, 438-39 (Fla.Dist.Ct.App. 1996).
In this case, there is no evidence of an employer-employee relationship between Sachs and the obstetrical and gynecological personnel at Beth Israel. Further, there is nothing to support an argument that he did not use due care for purposes of hiring employees. There is a lack of evidence as to any information Sachs might have had concerning potential employees which might lend support to the assertion that he hired an unfit physician. Similarly, there is no evidence of information that Sachs was, or should have been, aware of which would require dismissal of a current employee to satisfy a due care standard.
The plaintiffs emphasize Sachs’ deposition testimony in which he discussed his role as chair of the Department of Obstetrics and Gynecology, which included teaching, research, and providing supervision to the department. He also stated that he was Lieberman’s direct supervisor. While this testimony establishes Sachs’ position within Beth Israel, it is insufficient for purposes of establishing a claim of negligent hiring and supervision. There are no genuine issues of material fact relating to Sachs’ position at the hospital, nor to his supervisory role within his department.
D. Dr. Dvorak
Count IX alleges negligent hiring and supervision against Dvorak. The plaintiffs assert the same argument as to Sachs, but claim that Dvorak was negligent in hiring and supervision of personnel providing pathology medical services at Beth Israel. The Morriseys allege that Dvorak’s negligence in hiring and supervising personnel, as well as in establishing procedures to assure consistency and qualify of duties provided in the Pathology Department, and in failing to inform them of alternatives to and potential risks of treatment, caused Mrs. Morissey to sustain severe emotional and permanent physical injures.
The same discussion as to the negligent hiring and supervision claim against Sachs applies to Count IX against Dvorak. There is simply no evidence to support an argument that Dvorak was negligent in hiring or retaining employees at Beth Israel. As discussed earlier, the DPH determination that the failure to inform plaintiffs of their rights prior to disposing of the fetal remains represented a policy in violation of state law could provide significant support for a claim against Beth Israel. However, Dvorak did not violate the policy, and imposing liability in his individual capacity as Chief of Pathology in the guise of alleged negligence would be unfair.

ORDER

For the foregoing reasons it is hereby ORDERED that the motions for summary judgment of the Defendants Lieberman, Stillman, Sachs and Dvorak be ALLOWED.